STATE OF NEBRASKA, APPELLEE, V.
JAMES E. HITTLE, APPELLANT.
598 N.W. 2d 20

Filed July 23, 1999.    No. S-98-1074.

Richard Register for appellant.

Don Stenberg, Attorney General, and Susan J. Gustafson for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Following a jury trial, James E. Hittle was convicted of felony flight to avoid arrest and felony driving under a 15-year license suspension. The district court determined that he was a habitual criminal and sentenced him to terms of 20 to 30 years' imprisonment for each offense, with the sentences to run concurrently. Hittle appeals the convictions and sentences, asserting multiple

assignments of error. We affirm both convictions, but conclude that Hittle was improperly sentenced as a habitual criminal and therefore vacate the sentences imposed and remand the cause to the district court for resentencing.

## FACTS AND PROCEDURAL BACKGROUND

On April 15, 1998, Hittle was charged by information with flight to avoid arrest, in violation of Neb. Rev. Stat. § 28-905 (Reissue 1995), and operating a motor vehicle while his license was revoked pursuant to Neb. Rev. Stat. § 60-6,196(2)(c) (Reissue 1993), in violation of § 60-6,196(6), both Class IV felonies. The information charged that the offenses occurred in Dodge County, Nebraska, on or about February 21, 1998. On April 20, an amended information added an additional count, alleging that Hittle was a habitual criminal pursuant to Neb. Rev. Stat. § 29-2221 (Reissue 1995).

A jury trial was held on July 2, 1998. At trial, Bradley J. Hansen, a police officer for the city of Fremont, was asked whether he was so employed and on duty on "December 31st of 1998" and gave an affirmative response. He stated that while patrolling in the area of 23d and Lincoln Streets, he noticed a blue Ford pickup that roughly matched the description of a vehicle involved in a previously reported incident. When Hansen began following the pickup, he observed it enter a turn lane without activating its turn signal and then suddenly turn back into the traffic lane. When Hansen activated his cruiser's emergency lights, the pickup accelerated and a chase ensued for approximately seven blocks. The pickup then turned into a church parking lot and came to a stop in the backyard of a residence adjacent to the church.

From a distance of approximately 50 feet, with his cruiser's headlights illuminating the pickup, Hansen observed a person with long, black hair and wearing a dark-colored baseball cap and maroon sweatshirt jump out of the pickup and run behind the residence. At trial, Hansen identified Hittle as that person. With the assistance of other officers, Hansen found Hittle hiding behind some trash cans at the rear of a residence, and Hittle was apprehended.

.

Hansen testified that for safety reasons, he checked the interior of the pickup after he observed Hittle exit the vehicle. When he did so, he observed numerous items on the passenger side which would impair the ability of another person to sit on that side. Hansen stated that when the chase began, the driver of the pickup was the only person in the vehicle. Hansen testified without objection that at the time of his apprehension, Hittle stated that he had previously "beat" other charges by stating there was another driver in the vehicle.

On cross-examination, Hansen admitted that Hittle had a substantial beard and mustache on the day of the incident and that he did not mention this in his identification of the occupant of the pickup. Hansen admitted that he did not mention Hittle's comment about previously avoiding charges during his testimony at the preliminary hearing because he was not asked about it, despite the fact that the statement was mentioned in his police report. At the close of the State's case, Hittle's attorney moved to dismiss the flight to avoid arrest count based on insufficiency of the evidence, but made no motion as to the other felony count. The motion was overruled.

Hittle then testified in his own defense. He responded affirmatively when asked whether he was in Fremont "[o]n the evening in question here." According to Hittle, he was a passenger in the pickup which was driven by an individual named "Robert Martin." Hittle testified that when the pickup came to a stop in the church parking lot, Martin "bailed out of the truck" and rolled under it. Hittle then testified that he had to exit the pickup through the door on the driver's side because of a mechanical problem with the door on the passenger side. According to Hittle, in order to exit the pickup, he threw aside a gray box which was in the center of the seat of the pickup, which he claimed accounted for the items Hansen observed on the passenger seat.

Hittle testified that he fled from Hansen because he was frightened. He stated that he has "hypermodal activated anxieties" and that he takes medication for anxiety problems. Hittle denied telling Hansen that he had beat similar charges by saying that somebody else was driving. Rather, Hittle testified that he immediately told Hansen that Martin had been driving the

pickup. Hittle stated that he did not know where to find Martin as of the day of trial and that Martin did not have a permanent residence where he could be served with summons to appear as a witness.

Hittle's father testified that on the night of Hittle's arrest, someone whose name he did not know had driven Hittle from the family's home near Oakland, Nebraska, to Fremont. The father also testified that near midnight, Hittle's friend called and asked to be picked up in Fremont. Hittle's father testified that he went to Fremont and transported the person who had telephoned back to Oakland, but did not obtain his name. Hittle's mother testified that her husband received a call in the middle of the night on the night of Hittle's arrest and that her husband then left the house. She did not see whom he brought back. After resting his case, Hittle moved for dismissal and a directed verdict on the ground that the evidence was insufficient to warrant a conviction. The motion was overruled. The jury found Hittle guilty on both counts charged.

On August 25, 1998, Hittle's trial counsel withdrew at Hittle's request and a new attorney was appointed to represent him. On September 8, a hearing was held on the habitual criminal count. During the hearing, Hittle's new attorney expressed concern that Hittle's mental health and the medications he was taking could affect his ability to understand the proceedings. As a result, the trial court ordered that Hittle be committed to the Lincoln Regional Center for observation to determine his competency for sentencing, and the court continued the hearing on its own motion.

On September 11, 1998, Dr. Scott Moore, a psychiatrist for the Lincoln Regional Center, evaluated Hittle. He testified at the sentencing hearing held on September 22. Moore testified based upon his evaluation, which lasted approximately 90 minutes, that although Hittle was "a bit hypertalkative" and had a demeanor of "mild anxiety," he was not delusional. Moore did not observe any kind of disorganization of Hittle's thoughts or any kind of "slippage of reality testing in his thoughts." Moore also concluded that Hittle's intellectual capacity appeared to be "clinically average." After noting the medications Hittle was taking and their various side effects, Moore concluded that

Hittle was able to comprehend and understand the sentencing procedures. Moore also did not see "any great reason" to recommend a change of medication and wrote in his report, "I do not think that there is a psychiatric reason for delaying sentencing further."

Hittle testified at the hearing that a doctor had previously advised him that he may have a bipolar mood disorder. Hittle also testified that he did not believe he had a "100 percent" grasp of his mental faculties during trial. Hittle testified that he specifically asked his attorney to bring up competency issues prior to sentencing because he felt that his medications were affecting his ability to understand what was going on. When asked what part of the current proceeding he did not understand, he stated: "I don't know. I guess there really isn't a part I don't understand what's going on . . . ."

Based on this evidence and its observations of Hittle, the trial court found that he was competent to be sentenced. As a result, the court proceeded with the hearing regarding the habitual criminal statute. Hittle objected on the basis that although he had previously reviewed the exhibits to be introduced, he did not receive a notice of hearing until the day before and thus did not receive the proper 3-day notice required by § 29-2221(2). The court overruled this objection. At another point in the hearing, Hittle stated that he did not receive a full copy of one of the State's exhibits, requested that he be provided with the 3-day notice required by § 29-2221(2), and renewed his objection. This objection was also overruled.

The State offered two exhibits pertaining to the habitual criminal charge. The first exhibit established that in 1995, he was convicted in a single proceeding filed in the district court for Dodge County on charges of possession of a stolen firearm and possession of a controlled substance, for which he received concurrent sentences of 18-months' imprisonment. The second exhibit showed that in 1996, Hittle was convicted in the district court for Douglas County on a charge of operating a motor vehicle while his operator's license was suspended or revoked pursuant to § 60-6,196 and was sentenced to 1 to 2 years' imprisonment, with 117 days' credit for time served. These exhibits were received over Hittle's objection. The court also received an

exhibit offered by Hittle which reflected the manner in which good time is computed and the actual time served by Hittle on his prior convictions.

The trial court found that Hittle was a habitual criminal and sentenced him to incarceration for a period of not less than 20 nor more than 30 years' imprisonment for each count, with the sentences to run concurrently. Hittle appealed, and we transferred the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

Hittle assigns, restated and renumbered, that the district court erred in (1) determining that he was competent to stand trial and to be sentenced, (2) not conducting a separate hearing outside the presence of the jury to determine the admissibility of statements he made to police, (3) overruling his motions to dismiss and for directed verdict based upon insufficiency of the evidence, (4) sentencing him as a habitual criminal without adequate notice and based upon convictions which he contends may not be utilized for enhancement, and (5) imposing excessive sentences. Hittle also assigns that he received ineffective assistance of counsel at trial.

## STANDARD OF REVIEW

■ On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Arnold*, 253 Neb. 789, 572 N.W.2d 74 (1998).

■ The issue of competency is one of fact, and as reflected by Neb. Rev. Stat. § 29-1823 (Cum. Supp. 1998), the means used to resolve it are discretionary with the court. *State v. Bradford*, 223 Neb. 908, 395 N.W.2d 495 (1986). The fact finder's determination on the issue of competency will not be disturbed unless there is insufficient evidence to support the finding. *Id.*

## ANALYSIS

### COMPETENCY

Hittle contends that the record clearly shows that he was not competent either to stand trial or to be sentenced. We disagree. Section 29-1823(1) provides in part:

> If at any time prior to trial it appears that the accused has become mentally incompetent to stand trial, such disability may be called to the attention of the district court by the county attorney, by the accused, or any person for the accused. The judge of the district court of the county where the accused is to be tried shall have the authority to determine whether or not the accused is competent to stand trial. The district judge may also cause such medical, psychiatric, or psychological examination of the accused to be made as he or she deems warranted and hold such hearing as he or she deems necessary.

A person is competent to plead or stand trial if he or she has the capacity to understand the nature and object of the proceedings against him or her, to comprehend his or her own condition in reference to such proceedings, and to make a rational defense. *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992).

The issue of Hittle's competency was not raised by his counsel until after trial and prior to sentencing. At that time, the trial court properly ordered a competency evaluation which was subsequently conducted by Moore before Hittle was sentenced. Moore's report and his testimony at the competency hearing provide a strong factual basis for the trial court's determination that Hittle was competent to be sentenced and the record as a whole does not reflect that Hittle was incompetent at the time he stood for trial. The issue of competency is one of fact, and as reflected by § 29-1823, the means used to resolve it are discretionary with the court. See *State v. Bradford, supra.* The fact finder's determination on this issue will not be disturbed unless there is insufficient evidence to support the finding. *Id.* Because there was sufficient evidence to support the trial court's finding that Hittle was competent, this assignment of error is without merit.

### ADMISSIBILITY OF HITTLE'S STATEMENT

Hittle argues that he was surprised at trial by Hansen's testimony that Hittle stated he had avoided similar charges in the past by saying another person was driving and thus should have have been given a hearing outside the presence of the jury to determine whether this confession was voluntary and admissible. Pursuant to Neb. Rev. Stat. § 29-115 (Cum. Supp. 1998), a

person who is aggrieved by a statement taken from him or her which is claimed to be involuntary may move for suppression of that statement. An objection to such a statement is waived if it is not raised by a motion prior to trial with the exception that a court "may entertain such motions to suppress after the commencement of trial when the defendant is surprised by the introduction of such statements by the state." *Id.* Likewise, we have held that " '[t]he defendant may request a hearing on and a determination of voluntariness, but in the absence of such request, defendant cannot complain of the failure of the court to hold such a hearing and make such determination.' " *State v. Warren*, 227 Neb. 160, 162-63, 416 N.W.2d 249, 251 (1987), quoting *State v. Oliva*, 183 Neb. 620, 163 N.W.2d 112 (1968).

The record reflects that Hittle neither objected to the testimony of Hansen regarding his statement nor requested a hearing regarding its admissibility. Instead, he denied that the statement was made. Having unsuccessfully pursued this course of action at trial, he cannot take the position on appeal that he was entitled to a separate hearing on the issue of whether the statement, which he denies making, was voluntary. This assignment of error is without merit.

### SUFFICIENCY OF EVIDENCE

Hittle argues that the evidence was insufficient to support his convictions because it reflects that the offenses occurred on December 31, 1998, a date subsequent to his trial. The prosecutor obviously misspoke when, in preliminary questions posed to Hansen, he referred to the date of the events in question as "December 31st, of 1998." However, upon our review of the record as a whole, it is clear that in presenting evidence at trial, both the prosecutor and the defense counsel were referring to events which had occurred on February 21, 1998, the date referred to in the information. A photograph of Hittle in custody, dated February 21, 1998, was received in evidence without objection, and Hansen testified that the photo depicted Hittle as he appeared when he observed him on February 21, with the exception of the shirt he was wearing.

In addition, defense counsel questioned Hittle and his parents regarding events "on the night in question" and the night of

the arrest, which could only refer to the date of the offenses charged in the information. A criminal conviction will be affirmed, in the absence of prejudicial error, if the evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Garza,* 256 Neb. 752, 592 N.W.2d 485 (1999); *State v. Larsen,* 255 Neb. 532, 586 N.W.2d 641 (1998). We conclude that under this standard, the evidence is sufficient to establish that Hittle committed the charged offenses on February 21, 1998, and the trial court did not err in overruling his motions to dismiss and for a directed verdict.

Although Hittle assigns as error the failure of the trial court to grant his motions to dismiss and for a directed verdict, he does not discuss this assignment of error in his brief. Absent plain error, assignments of error not discussed in the briefs will not be addressed by this court. *State v. Thieszen,* 252 Neb. 208, 560 N.W.2d 800 (1997). Finding no plain error, we will not address this issue.

### APPLICATION OF HABITUAL CRIMINAL STATUTE

Subject to certain exceptions not applicable in the present case, Nebraska's habitual criminal statute, § 29-2221, provides:

(1) Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal and shall be punished by imprisonment . . . for a mandatory minimum term of ten years and a maximum term of not more than sixty years . . . .

Section 29-2221 further provides:

(2) When punishment of an accused as an habitual criminal is sought, the facts with reference thereto shall be charged in the indictment or information which contains the charge of the felony upon which the accused is prosecuted, but the fact that the accused is charged with being an habitual criminal shall not be an issue upon the trial of the felony charge and shall not in any manner be disclosed to the jury. If the accused is convicted of a felony, before sen-

tence is imposed a hearing shall be had before the court alone as to whether such person has been previously convicted of prior felonies. The court shall fix a time for the hearing and notice thereof shall be given to the accused at least three days prior thereto. At the hearing, if the court finds from the evidence submitted that the accused has been convicted two or more times of felonies and sentences imposed therefor by the courts of this or any other state or by the United States, the court shall sentence such person so convicted as an habitual criminal.

Although Hittle challenges his sentencing under the habitual criminal statute on several grounds, his principal argument is that the application of the statute results in a "double enhancement" which is contrary to our holding in *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980). Chapman was convicted of third-offense driving while under the influence of alcoholic liquor (DUI), a felony, and was sentenced as a habitual criminal based upon previous felony convictions for third-offense DUI and malicious destruction of property. Expressing a reluctance "to apply an expansive reading to the Habitual Criminal Act," we held that "offenses which are felonies because the defendant has been previously convicted of the same crime do not constitute 'felonies' within the meaning of prior felonies that enhance penalties under the habitual criminal statute." *Id.* at 370, 287 N.W.2d at 698.

In examining the question whether the most recent felony DUI conviction could trigger the application of the habitual criminal statute, we noted in *Chapman* that the "weight of authority is against double penalty enhancement through application of both a specific subsequent offense statute and a habitual criminal statute." *Id.* at 370, 287 N.W.2d at 699. We further recognized the decisions of other courts holding that penalty enhancement provisions set forth for subsequent offenses of specific crimes must be used when applicable instead of enhancement under a habitual criminal statute, thus avoiding "double penalty enhancement." *Id.* at 371, 287 N.W.2d at 699. We concluded that the specific penalty for third and subsequent offenses as set forth in the DUI statute "exempts offenders such

as Chapman from the operation of the habitual criminal provision." *Id.*

In Nebraska, the felony offense of driving under a suspended license is included in the DUI statute at § 60-6,196(6), which at the time of Hittle's offenses provided:

> Any person operating a motor vehicle on the highways or streets of this state while his or her operator's license has been revoked pursuant to subdivision (2)(c) [two previous DUI convictions] of this section shall be guilty of a Class IV felony.

In 1998, subsequent to the operative facts of this case, § 60-6,196(6) was amended by the addition of the following sentence: "If such person has had a conviction under this subsection prior to the date of the current conviction under this subsection, such person shall be guilty of a Class III felony." 1998 Neb. Laws, L.B. 309. Under other circumstances, driving under a suspended license is a misdemeanor. See Neb. Rev. Stat. § 60-4,186 (Reissue 1998).

Hittle was twice convicted of driving under a suspended license, in violation of § 60-6,196(6). His second conviction, from which this appeal arises, was utilized as one of the convictions which triggered the application of the habitual criminal statute, while his first conviction was considered as one of the two prior convictions justifying the enhanced penalty specified therein. It is true, as the State argues, that these facts do not fit squarely within our holding in *Chapman* because a violation of § 60-6,196(6) is a felony regardless of whether or not the defendant was previously convicted of the same offense.

However, we regard the holding in *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980), as resting upon two general principles: (1) A defendant should not be subjected to double penalty enhancement through application of both a specific subsequent offense statute and a habitual criminal statute and (2) the specific enhancement mechanism contained in Nebraska's DUI statutes precludes application of the general enhancement provisions set forth in the habitual criminal statute. The felony offense of driving under a suspended license is not included within our general criminal code but exists solely by virtue of a violation of § 60-6,196(6), which is a part of the statutory

scheme designed by the Legislature to criminalize the operation of a motor vehicle while under the influence of alcoholic liquor or drugs. See *State v. Louthan, ante* p. 174, 595 N.W.2d 917 (1999). One can become a felon for driving under a suspended license only by having first committed multiple DUI offenses, at least some of which are misdemeanors, for which the license suspension was imposed. Thus, in a real sense, the penalty for this particular act has been enhanced by virtue of the defendant's prior violations of other provisions within the same statute. Therefore, we hold that a felony conviction for driving under a suspended license in violation of § 60-6,196(6) may not be used either to trigger application of the habitual criminal statute or as a prior offense for purposes of penalty enhancement pursuant thereto.

█ In order to warrant enhancement of the penalty under the habitual criminal statute, prior convictions, except the first conviction, must be for offenses committed after each preceding conviction. *State v. Ellis*, 214 Neb. 172, 333 N.W.2d 391 (1983). Hittle's 1995 convictions for possession of a stolen firearm and possession of a controlled substance were based upon an information in which both offenses were alleged to have been committed on the same date and sentence was imposed on each conviction on the same date. Therefore, only one of these convictions may be considered for purposes of the habitual criminal statute. Thus, because of our holding that Hittle's 1995 conviction for felony driving on a suspended license cannot be considered for this purpose, the trial court erred in sentencing him as a habitual criminal and the sentences are hereby vacated, and the cause remanded for resentencing. Accordingly, we do not reach Hittle's assertion that he received inadequate notice under the habitual criminal statute or his separate assignment of error asserting excessive sentences.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Hittle contends that his trial counsel was ineffective because he failed to raise the issue of Hittle's competence to stand trial, failed to request a hearing regarding Hittle's alleged statement to Hansen, failed to make a motion to suppress that statement,

and failed to make a motion to dismiss both counts at the end of the State's evidence.

■ To state a claim of ineffectiveness of counsel as violative of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution, and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Burnett,* 254 Neb. 771, 579 N.W.2d 513 (1998); *State v. Marshall,* 253 Neb. 676, 573 N.W.2d 406 (1998).

■ Claims of ineffective assistance of counsel raised for the first time on direct appeal do not require dismissal ipso facto; the determining factor is whether the record is sufficient to adequately review the question. *State v. Jacob,* 253 Neb. 950, 574 N.W.2d 117 (1998), *cert. denied,* 525 U.S. 895, 119 S. Ct. 219, 142 L. Ed. 2d 180. When an issue has not been raised or ruled on at the trial level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id.*

Hittle's contention that his trial counsel's performance was ineffective because he did not raise competency at trial is dependent upon whether the attorney had any factual basis for doing so. This cannot be determined from the record before us, and we therefore do not address this issue on direct appeal.

Hittle's argument regarding his attorney's failure to file a motion to suppress his statement to Hansen and failure to request a hearing on the issue is without merit. As previously stated, Hittle clearly denied making the statement. Thus, any determination of whether the alleged statement was voluntary was unnecessary. Accordingly, Hittle did not receive ineffective assistance of counsel in this regard.

The record indicates that Hittle's trial counsel made a motion for a directed verdict on the count of flight to avoid arrest and chose not to make such a motion on the count regarding driving under a suspended license. The State presented evidence that Hittle was driving the pickup on the night of his arrest and that his license was currently suspended. In view of the evidence, we

cannot say that electing not to move for dismissal of the count regarding driving under a suspended license amounted to deficient performance.

## CONCLUSION

Hittle's convictions are affirmed, but because his 1995 conviction for felony driving under a suspended license should not have been considered for purposes of applying the habitual criminal statute, the sentences imposed by the trial court are vacated and the cause remanded for resentencing in accordance with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR RESENTENCING.