IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. GENCHI-GARCIA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JAIME GENCHI-GARCIA, APPELLANT.

Filed March 21, 2017.    No. A-16-649.

Appeal from the District Court for Douglas County: W. MARK ASHFORD, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Allyson A. Mendoza, and Katie Jadlowski, Senior Certified Law Student, for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Jaime Genchi-Garcia appeals a Douglas County District Court order finding him guilty of attempted first degree sexual assault of a child and sentencing him to a prison term of 15 to 25 years. On appeal, Genchi-Garcia argues that the district court erred in overruling his motion to suppress his statement to police and in imposing an excessive sentence. For the reasons set forth below, we affirm.

### BACKGROUND

On March 9, 2015, the State filed an information charging Genchi-Garcia with attempted first degree sexual assault of a child, a Class II felony pursuant to Neb. Rev. Stat. § 28-201(4)(a) (Cum. Supp. 2014) and Neb. Rev. Stat. § 28-319.01(1) (Cum. Supp. 2014). The charge stems from

an incident which occurred in the early morning hours of December 25, 2014. Evidence adduced at trial revealed that on that night, Genchi-Garcia had sexual contact with A.C., who was staying in Genchi-Garcia's apartment along with her mother, younger brother, and mother's friend. On December 25, 2014, A.C. was 13 years old and Genchi-Garcia was 29 years old.

On December 26, 2014, Genchi-Garcia agreed to accompany Omaha Police Officer Emilio Luna to police headquarters to answer questions about the night of December 25. Because Genchi-Garcia speaks Spanish and does not speak any English, Officer Luna acted as an interpreter during the questioning of Genchi-Garcia. Officer Luna translated Detective Sarah Spizzirri's questions to Genchi-Garcia and then translated Genchi-Garcia's answers to those questions back to Detective Spizzirri. During the interview, Genchi-Garcia ultimately admitted that he had sexual contact with A.C. Specifically, he indicated that he and A.C. had kissed, that he had rubbed her vagina over her clothing, and that he had touched his penis to her vagina. Genchi-Garcia denied penetrating A.C. and denied that he had forced A.C. to engage in this sexual contact. He maintained that both he and A.C. were "sexually aroused." Immediately after the interview concluded, Genchi-Garcia was arrested.

Prior to trial, Genchi-Garcia filed a motion to suppress the statements he had made to Detective Spizzirri and Officer Luna. In the motion, Genchi-Garcia argued, among other things, that his statement was not "freely and voluntarily given" and was not "knowingly, understandingly, and intelligently made." In addition, he argued that the statement was given "without his having been informed of his rights contrary to law."

A hearing was held on Genchi-Garcia's motion to suppress. At this hearing, Officer Luna testified about the interview with Genchi-Garcia. Officer Luna testified that prior to Detective Spizzirri asking Genchi-Garcia any questions, Officer Luna read him his *Miranda* rights in Spanish. Genchi-Garcia answered affirmatively that he understood each of his rights and that, knowing those rights, he was willing to speak with Detective Spizzirri and Officer Luna. Officer Luna testified that Genchi-Garcia appeared to understand the questions asked of him during the interview and his answers were responsive to the questions being asked. In addition, Officer Luna indicated that he had no concern that Genchi-Garcia was under the influence of drugs or alcohol or regarding Genchi-Garcia's mental health.

Officer Luna also testified about his role in translating for Genchi-Garcia and Officer Spizzirri during the interview. Officer Luna indicated that while he is fluent in both Spanish and English, Spanish is his first language. In fact, he did not speak English "fully" until he was in the third grade. Officer Luna explained that during the interview he interpreted "as close to word for word as possible" and "to the best of [his] ability." However, this was the first interview in which Officer Luna acted as a translator and he did not have any previous training on conducting bilingual interviews.

Subsequently, the district court entered an order denying Genchi-Garcia's motion to suppress his statement. The court found:

> During the time of interrogation, [Genchi-Garcia] never asked that the interview cease, never asked to speak to an attorney and appeared to cooperate with the officer's questioning. [Genchi-Garcia] did not appear to be under the influence of alcohol or any

other substance. [Genchi-Garcia] was offered numerous bathroom breaks and water to drink.

The questioning was not overly coercive or threatening, nor was [Genchi-Garcia] intimidated while giving his statement to the officers. The Court finds that the statements given by [Genchi-Garcia] to the police officers should not be suppressed, and may be used by the State during their case in chief.

A bench trial was held. At the trial, the State called several witnesses to testify, including, A.C. A.C. testified that in the early morning hours of December 25, 2014, she was watching television in the living room of Genchi-Garcia's apartment while her mother, her younger brother, and three other small children were asleep in a bedroom nearby. While A.C. was still awake, Genchi-Garcia came home and asked A.C. to massage his hand. She refused and started to walk toward the bedroom where her family was sleeping, but Genchi-Garcia got in front of her, picked her up, and covered her mouth so she could not speak. He took her to the couch in the living room where he layed her down on her stomach and got on top of her. Genchi-Garcia began kissing A.C. and pulled her pants and underwear down. He also tried to pull her shirt up so that he could kiss her chest. A.C. testified that she heard Genchi-Garcia undoing the belt on his pants and then felt his penis on her bare bottom. She testified that he did not penetrate her with his penis.

A.C. testified that Genchi-Garcia attempted to turn her over so that she was laying on her back. When he did this, she was able to kick him in the stomach and get away from him. Genchi-Garcia gave A.C. money and asked her not to tell her mom what happened. He also told her that he would buy her a cellular telephone if she did not tell her mom. At some point, A.C. ran to the bathroom and began cutting her wrists with a razor blade. Her mother heard her in the bathroom and came to see what was happening. A.C. told her mother what Genchi-Garcia had done to her. A.C. and her family left Genchi-Garcia's apartment. A.C.'s mother took A.C. to the emergency room the next morning where the police were contacted.

At the trial, the State also offered into evidence Genchi-Garcia's statement to police. Genchi-Garcia renewed his motion to suppress this statement and the district court again overruled the motion.

Genchi-Garcia did not offer any evidence in his defense.

The district court found Genchi-Garcia guilty of attempted first degree sexual assault of a child. Following a sentencing hearing, the court sentenced Genchi-Garcia to 15 to 25 years' imprisonment. The court afforded Genchi-Garcia credit for 543 days served.

Genchi-Garcia appeals.

## ASSIGNMENTS OF ERROR

Genchi-Garcia assigns two errors on appeal. He asserts that (1) the district court erred in overruling his motion to suppress his statement to police and (2) the district court erred in imposing an excessive sentence.

STANDARD OF REVIEW

In reviewing a motion to suppress a confession based on the claimed involuntariness of the statement, including claims that it was procured in violation of the safeguards established by the U.S. Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), an appellate court applies a two-part standard of review. With regard to historical facts, an appellate court reviews the trial court's findings for clear error. Whether those facts suffice to meet the constitutional standards, however, is a question of law, which an appellate court reviews independently of the trial court's determination. *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009).

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

ANALYSIS

MOTION TO SUPPRESS STATEMENT

Genchi-Garcia argues that the district court erred by denying his motion to suppress the statement he made to police because he did not "voluntarily, knowingly, and intelligently waive[] his *Miranda* rights." Brief for appellant at 12. Upon our review, we find that Genchi-Garcia's assertion lacks merit.

There is no dispute that Genchi-Garcia was interrogated while in police custody and, therefore, was entitled to be advised of what have come to be known as *Miranda* rights prior to the interrogation. "*Miranda* requires procedures that will warn a suspect in custody of his right to remain silent and which will assure the suspect that the exercise of that right will be honored." *Dickerson v. United States*, 530 U.S. 428, 442, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). *Miranda* rights can be waived if the suspect does so knowingly and voluntarily. *State v. Goodwin*, *supra*; *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006). A valid *Miranda* waiver must be voluntary in the sense that it was the product of a free and deliberate choice and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. See *State v. Walker*, *supra*, citing *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). In determining whether a *Miranda* waiver is knowingly and voluntarily made, a court applies a totality of the circumstances test. Factors to be considered include the suspect's age, education, intelligence, prior contact with authorities, and conduct. *State v. Bormann*, 279 Neb. 320, 777 N.W.2d 829 (2010); *State v. Goodwin*, *supra*.

Genchi-Garcia asserts that his "minimal education, illiteracy, brief prior contact with police, and conduct indicate the alleged waiver [of his *Miranda* rights] was not knowing and intelligent and consequentially, invalid." Brief for appellant at 12. The crux of Genchi-Garcia's argument in support of his assertion is based upon his status as a "Mexican national" who does not speak English and is not familiar with American criminal procedures. Brief for appellant at 13-14.

Contrary to Genchi-Garcia's assertion that the waiver of his *Miranda* rights was not knowingly and intelligently made, the evidence presented at the hearing on his motion to suppress

and at trial does not provide any indication that Genchi-Garcia did not understand his *Miranda* rights or did not understand the consequences of waiving those rights.

Officer Luna testified at the hearing on Genchi-Garcia's motion to suppress and at trial that prior to the start of the interrogation, he read Genchi-Garcia, in Spanish, the rights advisory form which sets out the *Miranda* rights. After listening to each right, Genchi-Garcia responded affirmatively that he understood that right. Then, Genchi-Garcia responded affirmatively that, knowing all of his rights, he was willing to speak to Officer Luna and Detective Spizzirri. Genchi-Garcia did not ask any questions about his *Miranda* rights, nor did he express any lack of understanding about those rights. Moreover, there is no indication that Genchi-Garcia lacked the intelligence to understand or appreciate his *Miranda* rights. Officer Luna testified that throughout the interrogation, Genchi-Garcia appeared to understand everything that was asked of him. His response to each question was appropriate. Genchi-Garcia was cooperative during the interrogation. In addition, Genchi-Garcia appeared to have a basic understanding of the purpose of the interrogation and of the legal system. At the end of the interview, Genchi-Garcia indicated that he knew that, based on the events of December 25, 2014, he was probably going to be arrested and taken to jail.

The totality of the circumstances surrounding Genchi-Garcia's waiver of his *Miranda* rights and the interrogation, itself, indicates that Genchi-Garcia voluntarily, knowingly, and intelligently waived his *Miranda* rights and willingly spoke to Officer Luna and Detective Spizzirri. His assertion to the contrary is not supported by the evidence and lacks merit.

Genchi-Garcia also asserts that his statement to police should have been suppressed because Officer Luna was an "untrained" interpreter and the use of such an inexperienced interpreter violated his rights. Brief for appellant at 18. This assertion also lacks merit.

First, we note that Genchi-Garcia concedes in his brief to this court that there is no authority which requires that a person who interprets during a police interrogation must have any special training or license. Brief for appellant at 18. In addition, Genchi-Garcia does not argue that Officer Luna failed to translate accurately. Given that the interrogation was recorded on video, Genchi-Garcia could have pointed out any discrepancies in Officer Luna's translations by calling a certified interpreter as a witness, but he failed to do so. Because Genchi-Garcia does not provide any support for his assertion that Officer Luna was in some way unqualified or incapable of translating during the interrogation, he cannot demonstrate that the use of Officer Luna as an interpreter violated his rights in any way.

Upon our review of the record, we conclude that the district court did not err in overruling Genchi-Garcia's motion to suppress his statement to police. The statement was admissible at trial.

EXCESSIVE SENTENCE

Genchi-Garcia also asserts that he received an excessive sentence. Genchi-Garcia argues that the court did not seriously consider all the relevant mitigating factors, specifically his age, his limited education, the impact a lengthy sentence would have on his family, his positive social background, his minimal criminal record, and his low risk of recidivism. Genchi-Garcia also argues that the court improperly construed his silence as a lack of remorse. Finally, Genchi-Garcia

argues that he should have been given a shorter sentence because he will be subject to immediate deportation upon release. We find no merit to this assignment of error.

When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors; rather, the appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Genchi-Garcia was convicted of attempted first degree sexual assault of a child, a Class II felony. See §§ 28-201(4)(a) and 28-319.01(1). A Class II felony is punishable by 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014). Because Genchi-Garcia's sentence of 15 to 25 years falls within the statutorily provided range, we review the sentence imposed only for an abuse of discretion. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

At the sentencing hearing, Genchi-Garcia's counsel highlighted many of the factors he now claims the court disregarded. In particular, Genchi-Garcia's attorney informed the court that Genchi-Garcia had remained silent during the presentence investigation on her advice, but pointed out that he had expressed remorse during his police interview. Additionally, the attorney noted that two risk assessments had placed Genchi-Garcia at a low risk of recidivism. His attorney also noted his minimal criminal history and the fact that he was subject to deportation upon his release from prison.

The State emphasized the impact Genchi-Garcia's actions had on the victim, arguing that he was convicted of an attempted rather than completed crime only "because of [the victim's] ability to fight him off that night." The State asked the court to impose "a period of incarceration."

The presentence report indicated that Genchi-Garcia is 30 years old. The report also noted that Genchi-Garcia came from a poor family in Mexico and had attended only five years of school due to having to work to support his family. Genchi-Garcia now has a wife and two children in Mexico and claims he is in the United States to make money in order to pay for his daughter's schooling. Genchi-Garcia stated that he "sometimes" attended a Catholic church in Omaha prior to being incarcerated. The presentence report indicated that Genchi-Garcia has a minimal criminal record involving only traffic offenses.

The presentence report also confirmed that Genchi-Garcia is an undocumented immigrant and that an "ICE hold" had been placed on him. According to the probation officer, Genchi-Garcia displayed no remorse or concern for the victim during the presentence report interview. The probation officer stated that Genchi-Garcia did not remember the incident. Genchi-Garcia's overall score on the LSCMI placed him in the medium to high risk range.

In imposing the sentence on Genchi-Garcia, the district court stated that the victim was "going to have difficulties, likely, as a result of what happened here." The court agreed with the State that the victim "was strong enough to resist, in a substantial manner, probably, which enabled or prevented, rather, a far worse result." The court concluded that a sentence of 15 to 25 years was appropriate.

The record shows that the district court heard and considered Genchi-Garcia's attorney's arguments for leniency, but ultimately placed great weight upon the impact on the victim and the fact that her actions alone prevented the crime from escalating to a more serious offense. Given the court's consideration and weighing of the numerous relevant factors, we cannot say that it abused its discretion in sentencing Genchi-Garcia to 15 to 25 years' incarceration.

## CONCLUSION

We conclude that the district court did not err in overruling Genchi-Garcia's motion to suppress his statement to police. Additionally, we conclude that the district court did not abuse its discretion in sentencing Genchi-Garcia. We affirm Genchi-Garcia's conviction and sentence.

AFFIRMED.