Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/03/2016 10:06 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
ABEJIDE ABEJIDE, ALSO KNOWN AS
GAYLORD MASON, APPELLANT.
___ N.W.2d ___

Filed June 3, 2016.    No. S-15-180.

1. **Jury Instructions.** Whether the jury instructions given by a trial court
   are correct is a question of law.
2. **Judgments: Appeal and Error.** When reviewing questions of law, an
   appellate court resolves the questions independently of the conclusion
   reached by the lower court.
3. **Convictions: Evidence: Appeal and Error.** In reviewing a claim that
   the evidence was insufficient to support a criminal conviction, an appel-
   late court does not resolve conflicts in the evidence, pass on the credibil-
   ity of witnesses, or reweigh the evidence; such matters are for the finder
   of fact, and a conviction will be affirmed, in the absence of prejudicial
   error, if the evidence admitted at trial, viewed and construed most favor-
   ably to the State, is sufficient to support the conviction.
4. **Sentences: Appeal and Error.** An appellate court will not disturb a sen-
   tence imposed within the statutory limits absent an abuse of discretion
   by the trial court.
5. **Jury Instructions: Proof: Appeal and Error.** To establish reversible
   error from a court's refusal to give a requested instruction, an appel-
   lant has the burden to show that (1) the tendered instruction is a correct
   statement of the law, (2) the tendered instruction is warranted by the
   evidence, and (3) the appellant was prejudiced by the court's refusal to
   give the tendered instruction.
6. **Lesser-Included Offenses.** Whether a crime is a lesser-included offense
   is determined by a statutory elements approach and is a question of law.
   Under the statutory elements approach, for an offense to be a lesser-
   included offense, it must be impossible to commit the greater offense
   without also committing the lesser offense.

7. **Lesser-Included Offenses: Sexual Assault.** Attempted third degree sexual assault is not a lesser-included offense of attempted first degree sexual assault.

8. **Criminal Law: Juries: Verdicts.** Where a single offense may be committed in a number of different ways and there is evidence to support each of the ways, the jury need only be unanimous in its conclusion that the defendant violated the law by committing the act. It need not be unanimous in its conclusion as to which of several consistent theories it believes resulted in the violation.

9. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

10. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

11. **Habitual Criminals: Sentences: Convictions.** By its terms, Neb. Rev. Stat. § 29-2221 (Reissue 2008) requires the triggering offense to be "a felony" before the habitual criminal statute will apply to the sentencing of the triggering offense. But in order to be one of the prior convictions that establishes habitual criminal status, § 29-2221 does not require that the prior conviction was a "felony" per se; instead, it requires that the prior conviction resulted in a sentence of imprisonment for a term "of not less than one year."

12. **Sentences.** In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime.

Appeal from the District Court for Lancaster County: Paul D. Merritt, Jr., Judge. Affirmed.

Joseph D. Nigro, Lancaster County Public Defender, and Kristi J. Egger Brown for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, and Cassel, JJ.

Miller-Lerman, J.

## I. NATURE OF CASE

Abejide Abejide, also known as Gaylord Mason, was convicted by a jury of attempted first degree sexual assault and terroristic threats. The district court for Lancaster County found Abejide to be a habitual criminal and sentenced him to imprisonment for 10 to 20 years for attempted first degree sexual assault and for 10 to 10 years for terroristic threats. Abejide appeals his convictions and sentences. His assignments of error challenge the court's refusal to give certain proposed instructions, the sufficiency of the evidence, the effectiveness of trial counsel, and the alleged excessiveness of his sentence. We affirm Abejide's convictions and sentences.

## II. STATEMENT OF FACTS

Abejide was arrested and charged with attempted first degree sexual assault and terroristic threats in connection with an incident that occurred on May 24, 2014. At Abejide's jury trial, the victim testified that she was walking to a grocery store when a man she knew called out to her. The man was Howard Mason, who is Abejide's brother. The victim crossed the street to talk with Mason, who was on the sidewalk drinking beer with a few other people, including Abejide. She talked and drank beer with the group for a while. At some point, Mason and Abejide got into an argument and Mason left. Later, as the victim was leaving, Abejide pulled her into an alley, where he started choking her and told her he was going to "knock [her] out." The victim testified that she thought that Abejide was going to kill her. She further testified that she thought that Abejide was trying to rape her, because he pushed her against a wall and pulled her pants down and took his own pants down. She testified that Abejide told her that he was going to do something which she understood to mean that he was going to sexually assault her. The victim started screaming and told him to stop. The next thing she remembered was that a police officer arrived and handcuffed

Abejide. The victim testified that she had never met Abejide before that day and that she did not consent to having sexual intercourse with him in the alley.

A Lincoln police officer testified that he received a call to respond to a report of a possible domestic disturbance in an alley. He parked his patrol car nearby and walked to the alley. When he turned a corner, he saw Abejide holding a woman face first against the wall. The woman's pants were pulled down and Abejide's penis was exposed. The officer testified that the woman appeared "shaken," "upset," and "fearful" and that when she saw him, she said, more than once, "'Help me. He's trying to rape me.'" The officer pulled Abejide away from the woman and put him into handcuffs. The officer and another officer who later arrived at the scene of the incident both testified that Abejide appeared to be intoxicated but that he was able to comply with instructions and could walk on his own.

After the State rested its case, the court overruled Abejide's motion to dismiss the terroristic threats charge. Abejide did not move to dismiss the attempted first degree sexual assault charge, and he did not thereafter present any evidence in his defense.

At the jury instruction conference, the court refused a number of Abejide's proposed instructions, three of which are at issue in this appeal. The first proposed instruction was an instruction which included attempted third degree sexual assault as a lesser-included offense of attempted first degree sexual assault. The court instead gave an instruction which set forth no lesser-included offense to attempted first degree sexual assault.

The second proposed instruction at issue in this appeal was an instruction setting forth the elements of the offense of terroristic threats. Abejide's proposed instruction required the jury to reach unanimous agreement regarding whether Abejide acted with the intent to terrorize the victim or whether he acted in reckless disregard of the risk of causing terror to the

victim. The court instead instructed the jury that it "need not agree unanimously on whether . . . Abejide intended to terrorize [the victim] or acted in reckless disregard of terrorizing [the victim]," so long as the jury agreed unanimously that the State established either state of mind of the defendant beyond a reasonable doubt.

The third and final proposed instruction at issue in this appeal was an instruction setting forth an intoxication defense and instructing the jury that it could consider evidence of Abejide's intoxication in deciding whether he had the required intent or whether he was so overcome by the use of alcohol that he could not have formed the required intent. In refusing Abejide's proposed instruction, the court cited Neb. Rev. Stat. § 29-122 (Cum. Supp. 2014), which generally provides that voluntary intoxication is not a defense to any criminal offense and may not be considered in determining the existence of a mental state of the defendant where mental state is an element of the offense. The court noted that to the extent there was evidence that Abejide was intoxicated, there was no evidence that his intoxication was not voluntary. The court therefore instructed the jury that it could not consider Abejide's voluntary intoxication in deciding whether he had the required intent. Abejide objected to the court's instruction on the basis that it unconstitutionally diminished the State's burden to prove each and every element of the offense and that § 29-122 improperly imposed a burden on Abejide to present evidence which might require him to give up other constitutional rights, such as the right to remain silent. The court overruled Abejide's objection.

The jury found Abejide guilty of both attempted first degree sexual assault and terroristic threats. After the court entered judgment based on the jury's verdicts, the court held a hearing to consider the State's charge that Abejide was a habitual criminal. Based on evidence presented by the State, the court found that Abejide had three prior convictions, each of which involved a sentence of not less than 1 year: a conviction in

1994 for attempted first degree sexual assault of a child, for which he was sentenced to imprisonment for 6 to 9 years; a conviction in 2007 for a violation of the Sex Offender Registration Act (SORA), second offense, for which he was sentenced to imprisonment for 2 to 4 years; and a conviction in 2011 for a violation of the SORA, for which he was sentenced to imprisonment for 20 months to 4 years. The court further found that Abejide was represented by counsel in each prior conviction. The court found that Abejide was a habitual criminal. The court thereafter sentenced Abejide to imprisonment for 10 to 20 years for attempted first degree sexual assault and for 10 to 10 years for terroristic threats; the court ordered the sentences to be served consecutively to one another.

Abejide appeals his convictions and sentences.

## III. ASSIGNMENTS OF ERROR

Abejide claims that the district court erred when it rejected his proposed jury instructions regarding attempted third degree sexual assault as a lesser-included offense of attempted first degree sexual assault, the elements of terroristic threats and the requirement of unanimity with regard to the defendant's state of mind, and the intoxication defense. He also claims that there was not sufficient evidence to support the verdicts and that he was denied effective assistance of counsel in certain respects. Abejide finally claims that the court imposed an excessive sentence. In connection with the claim of an excessive sentence, Abejide argues that his prior convictions for violations of the SORA should not have been used to support a finding that he was a habitual criminal.

## IV. STANDARDS OF REVIEW

[1,2] Whether the jury instructions given by a trial court are correct is a question of law. *State v. Armagost*, 291 Neb. 117, 864 N.W.2d 417 (2015). When reviewing questions of law, an appellate court resolves the questions independently of the conclusion reached by the lower court. *Id*.

[3] In reviewing a claim that the evidence was insufficient to support a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

[4] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016).

## V. ANALYSIS

### 1. THE DISTRICT COURT DID NOT ERR IN ITS RULINGS REGARDING JURY INSTRUCTIONS

[5] Abejide claims that the district court erred when it rejected his proposed jury instructions on the offense of attempted first degree sexual assault, the offense of terroristic threats, and the defense of intoxication. To establish reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Armagost, supra*. We conclude that the district court did not commit reversible error when it refused each of the proposed instructions.

### (a) Attempted First Degree Sexual Assault Instruction

Abejide proposed an elements instruction which included attempted third degree sexual assault as a lesser-included offense of attempted first degree sexual assault. The court refused Abejide's proposed instruction and instead gave an

instruction which set forth no lesser-included offense. Abejide contends that the jury should have been instructed on attempted third degree sexual assault as a lesser-included offense. We reject Abejide's contention.

[6] We addressed this issue in *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012), wherein the defendant claimed that the trial court erred when it refused to instruct the jury on third degree sexual assault as a lesser-included offense of first degree sexual assault. We noted in *Kibbee* that whether a crime is a lesser-included offense is determined by a statutory elements approach and is a question of law. Under the statutory elements approach, for an offense to be a lesser-included offense, it must be impossible to commit the greater offense without also committing the lesser offense. With respect to whether third degree sexual assault is a lesser-included offense of first degree sexual assault, we adopted the reasoning of the Nebraska Court of Appeals in *State v. Schmidt*, 5 Neb. App. 653, 562 N.W.2d 859 (1997), and rejected the defendant's contention.

[7] In *Schmidt*, the Court of Appeals concluded that attempted third degree sexual assault is not a lesser-included offense of attempted first degree sexual assault. The Court of Appeals reasoned that, given the statutory definitions applicable to sexual assault crimes, it is possible to have "sexual penetration," an element of first degree sexual assault, without having "sexual contact," an element of third degree sexual assault, and that therefore, the crime of first degree sexual assault can be committed without at the same time committing third degree sexual assault. *Schmidt*, 5 Neb. App. at 675, 562 N.W.2d at 875-76. We concluded in *Kibbee, supra*, that third degree sexual assault is not a lesser-included offense of first degree sexual assault.

The holdings in *Kibbee* and *Schmidt* apply here. Abejide acknowledges the precedent of *Kibbee* and *Schmidt* but argues that those decisions were erroneous and urges us to revisit the issue. We find no error in the reasoning in *Kibbee* and *Schmidt*.

Abejide's tendered instruction, which included attempted third degree sexual assault as a lesser-included offense of attempted first degree sexual assault, was not a correct statement of the law, and therefore, the district court did not commit reversible error when it refused the instruction.

### (b) Terroristic Threats Instruction

Abejide proposed an instruction setting forth the elements of terroristic threats and instructing the jury that it had to reach a unanimous decision regarding intent. He proposed instructing the jury that it could find him guilty of either "intentional terroristic threats" or "reckless terroristic threats" but that it must unanimously agree on whether he acted "with the intent to terrorize" or whether he acted "in reckless disregard of the risk of causing such terror." The court refused Abejide's proposed instruction. Instead, the court instructed the jury that it could find Abejide guilty of terroristic threats if it found that he acted either with intent to terrorize or in reckless disregard of terrorizing the victim but that "you need not agree unanimously on whether . . . Abejide intended to terrorize [the victim] or acted in reckless disregard of terrorizing [the victim], so long as you agree unanimously that the state has established either of the elements . . . beyond a reasonable doubt." We find no error in the court's refusal to instruct as requested by Abejide.

[8] We have stated that where a single offense may be committed in a number of different ways and there is evidence to support each of the ways, the jury need only be unanimous in its conclusion that the defendant violated the law by committing the act. *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009). It need not be unanimous in its conclusion as to which of several consistent theories it believes resulted in the violation. *Id*. As an example, we have applied these standards in cases involving a charge of first degree murder which may be committed under either a felony murder theory or a premeditated murder theory. In such cases, we have

held that a jury need not be unanimous as to the theory upon which it relies to convict a defendant, as long as each juror is convinced beyond a reasonable doubt that the defendant committed the crime. E.g., *State v. Mata*, 275 Neb. 1, 745 N.W.2d 229 (2008) (citing *State v. White*, 254 Neb. 566, 577 N.W.2d 741 (1998)).

By similar reasoning, we have concluded that for a defendant to be convicted of driving under the influence, the jury is not required to be unanimous on whether the defendant is guilty of the offense because he was driving "while impaired by alcohol" or because he was driving while his blood alcohol concentration was over the statutory legal limit. *State v. Parker*, 221 Neb. 570, 573, 379 N.W.2d 259, 261 (1986). See, also, *State v. Casillas*, 279 Neb. 820, 840, 782 N.W.2d 882, 899 (2010) (stating that "a driving-under-the-influence offense can generally be shown either by evidence of physical impairment and well-known indicia of intoxication or simply by excessive alcohol content shown through a chemical test and that the jury need not be unanimous in its determination of under which means the offense was committed"). In this regard, in *Parker, supra*, we held that "the defendant is not entitled to an instruction that in order for the defendant to be found guilty, the jury must be unanimous with regard to any one theory or the jury must find the defendant not guilty." 221 Neb. at 573, 379 N.W.2d at 261.

Citing to *Parker, supra*, the Court of Appeals has determined with respect to terroristic threats that there is generally no requirement that the jury unanimously agree whether the crime was intentional or reckless. *State v. Rye*, 14 Neb. App. 133, 705 N.W.2d 236 (2005). However, in *Rye*, the Court of Appeals noted that where an additional charge such as use of a weapon to commit a felony requires that the predicate offense be an intentional crime, then in that case, the jury must unanimously agree that the predicate offense of terroristic threats was intentional in order to convict the defendant of the additional charge.

As relevant to this case, Neb. Rev. Stat. § 28-311.01(1) (Reissue 2008), regarding the crime of terroristic threats, provides: "A person commits terroristic threats if he or she threatens to commit any crime of violence: (a) With the intent to terrorize another; . . . or (c) In reckless disregard of the risk of causing such terror . . . ." Thus, the statute defines terroristic threats as a single offense which may be committed different ways. A juror in this case could find, consistent with the evidence, that Abejide threatened to commit a crime of violence and that he did so either with the intent to terrorize the victim or in reckless disregard of causing such terror. Given the statute and our application thereof, the jury was not required to be unanimous as to which state of mind Abejide possessed.

Abejide's proposed instruction requiring such unanimity was not a correct statement of law. We therefore reject his claim that the district court erred when it refused his proposed instruction.

### (c) Intoxication Defense Instruction

Abejide proposed an instruction setting forth an intoxication defense. The proposed instruction stated that the jury could "consider evidence of alcohol use along with all the other evidence in deciding whether . . . Abejide had the required intent" but that it could "not consider intoxication if . . . Abejide voluntarily became intoxicated so that he could commit the crime or crimes charged in the information." The court refused this proposed instruction, and based on the evidence and the controlling statute, § 29-122, the court instructed the jury that it could not consider Abejide's voluntary intoxication in deciding whether he had the required intent.

In its ruling refusing Abejide's proposed intoxication defense instruction, the court cited § 29-122, regarding intoxication as a defense. Section 29-122 provides as follows:

> A person who is intoxicated is criminally responsible for his or her conduct. Intoxication is not a defense to any criminal offense and shall not be taken into

consideration in determining the existence of a mental state that is an element of the criminal offense unless the defendant proves, by clear and convincing evidence, that he or she did not (1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication or (2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily.

In connection with its ruling refusing Abejide's proposed intoxication defense instruction, the court noted that there was no evidence that Abejide did not know that he had ingested an intoxicating substance or that he had not voluntarily ingested it. Abejide's proposed instruction did not correctly state the law under § 29-122, and the evidence did not warrant an instruction setting forth an instruction regarding involuntary intoxication. See § 29-122. Abejide therefore has not shown that the district court's refusal to give his proposed instruction was reversible error.

Abejide acknowledges that pursuant to § 29-122, "intoxication can only be used as a defense if a defendant did not know they [sic] were ingesting an intoxicating substance, or did not ingest the intoxicating substance voluntarily." Brief for apellant at 28. Apparently acknowledging that there was no evidence in this case that Abejide did not know that he had ingested an intoxicating substance or that he had not voluntarily ingested it, Abejide contends that it was unconstitutional to put the burden on the defendant to provide such evidence and that when there is evidence that the defendant was intoxicated, the burden should be on the State to prove that the defendant knew he or she was ingesting an intoxicating substance and that the defendant did so voluntarily.

We note two significant features of § 29-122. First, the statute provides that "[a] person who is intoxicated is criminally responsible for his or her conduct" and that, generally, "[i]ntoxication is not a defense to any criminal offense and shall not be taken into consideration in determining the

existence of a mental state that is an element of the criminal offense . . . ." However, the statute provides an exception to this general rule when "the defendant proves, by clear and convincing evidence, that he or she did not (1) know that it was an intoxicating substance when he or she ingested, inhaled, injected, or absorbed the substance causing the intoxication or (2) ingest, inhale, inject, or absorb the intoxicating substance voluntarily." Section 29-122 is generally understood to make a distinction between voluntary intoxication, which may not either provide a defense or be considered in determining the existence of a mental state, and involuntary intoxication, which may be so used.

With regard to whether the statute may constitutionally provide that voluntary intoxication is not a defense and may not be considered when determining the existence of a mental state, we note that in *Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996), the U.S. Supreme Court rejected a due process challenge to a Montana statute with provisions similar to § 29-122. The Montana statute provided in part that voluntary intoxication "'may not be taken into consideration in determining the existence of a mental state which is an element of [a criminal] offense.'" *Egelhoff*, 518 U.S. at 39-40. Two pluralities of four justices in *Egelhoff* disagreed on whether the statute violated due process when characterized as an evidentiary rule designed to prevent the defendant from presenting evidence of voluntary intoxication in his or her defense. However, Justice Ginsburg wrote a concurrence in which she characterized the statute as a "legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions." 518 U.S. at 57 (Ginsburg, J., concurring in judgment). As such, Justice Ginsburg reasoned, the statute removed the subject of voluntary intoxication from the mens rea inquiry, "thereby rendering evidence of voluntary intoxication logically irrelevant to proof of the requisite mental state." 518 U.S. at 58. Because "[s]tates enjoy wide latitude in defining the elements of criminal offenses," Justice

Ginsburg concluded that the statute, read as a law "[d]efin-ing *mens rea* to eliminate the exculpatory value of voluntary intoxication," did not offend due process. 518 U.S. at 58-59. The plurality which found no due process violation when the statute was viewed as an evidentiary rule stated that it was "in complete agreement" with Justice Ginsburg's characterization of the statute and that it had analyzed the statute as an eviden-tiary rule "simply because that [was] how the [court below] chose to analyze it." 518 U.S. at 50 n.4.

We believe that, similar to the statute at issue in *Egelhoff, supra*, § 29-122 is a "legislative judgment regarding the cir-cumstances under which individuals may be held criminally responsible for their actions." See *Egelhoff*, 518 U.S. at 57 (Ginsburg, J., concurring in judgment). Although the statute redefined the circumstances under which the requisite state of mind may be found, the statute did not relieve the State of the burden of proving a state of mind that is a required element of a criminal offense. See *Egelhoff, supra* (Scalia, J., for plural-ity) (burden was not shifted under statute and court instructed jury that State had burden of proving guilt beyond reasonable doubt). By removing voluntary intoxication from consider-ation of whether the defendant had the required mental state, § 29-122 redefines the circumstances under which the requisite mental state may be found but it does not relieve the State of its burden to prove the requisite mental state.

Abejide does not contend that the Legislature could not provide that voluntary intoxication is not a defense and can-not be considered in determining the existence of a mental state that is an element of a crime. Instead, he focuses on the second feature of the statute which allows the use of involun-tary intoxication for such purposes, but only if the defendant "proves, by clear and convincing evidence" that intoxication was involuntary as set forth in the statute. Abejide argues that it violates due process to put the burden on the defendant to prove that intoxication was involuntary. He cites *Sandstrom v. Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39

(1979), in which the U.S. Supreme Court held that a conclusive presumption or a presumption that shifts to the defendant the burden of persuasion with respect to an element of a crime deprives the defendant of due process because it relieves the State of its duty to prove every element beyond a reasonable doubt.

In response to Abejide's due process argument, the State cites *Patterson v. New York*, 432 U.S. 197, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), for the proposition that it is not unconstitutional to put the burden on the defendant to prove an affirmative defense. The Court in *Patterson* stated that "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required" and that it is "constitutionally permissible to provide that various affirmative defenses [are] to be proved by the defendant." 432 U.S. at 210-11. See, also, *Smith v. United States*, ___ U.S. ___, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013). However, the Court was careful in *Patterson* to distinguish between an affirmative defense that "constitutes a separate issue on which the defendant is required to carry the burden of persuasion" and a defense that "serve[s] to negative any facts of the crime which the State is to prove in order to convict." 432 U.S. at 207. *Patterson* makes an important distinction between a defense that merely negates an element of the crime and a defense that constitutes an issue separate from the elements of the crime.

Therefore, whether § 29-122 violates due process by placing on the defendant the burden to prove by clear and convincing evidence that the defendant was involuntarily intoxicated may depend in part on whether involuntary intoxication is a defense that presents an issue separate from the elements of the crime or whether it is a defense that merely negates the mental state that is an element of the crime. In this regard, we discuss below the types of burdens of proof, the constitutional implications of those burdens, and the facts of this case relative thereto. And we determine that it does not violate due process to put the burden on the defendant to

produce at least some evidence that intoxication was involuntary and that, here, where there was no evidence presented by either Abejide or the State to indicate that Abejide's intoxication was involuntary, the court did not unconstitutionally refuse Abejide's proposed instruction regarding involuntary intoxication.

While § 29-122 puts the burden on the defendant to prove involuntary intoxication by clear and convincing evidence, the burden of proof is generally understood to include two separate burdens—the burden of production and the burden of persuasion. See *State v. Ryan*, 249 Neb. 218, 543 N.W.2d 128 (1996) (Gerrard, J., dissenting), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998). In *Ryan*, the dissent recognized that "[t]here is a clear constitutional distinction between casting the burden of *production* on an accused and casting the burden of *persuasion* on an accused" and that "it is the *burden of persuasion* that the state is required to bear beyond a reasonable doubt . . . not the burden of production." 249 Neb. at 251, 543 N.W.2d at 150 (emphases in original). See, also, *Patterson, supra* (referring to allocation of burden of persuasion). With regard to putting on the defendant the burden of production with regard to a defense, it has been stated:

> As to the burden of production of evidence, it is uniformly held that the defendant is obliged to start matters off by putting in some evidence in support of his defense—e.g., evidence of his insanity, or of his acting in self-defense, or of one of the other affirmative defenses—unless of course the prosecution, in presenting its own side of the case, puts in some evidence of a defense, in which case the matter of defense is properly an issue though the defendant himself produces nothing further to support it. Experience shows that most people who commit crimes are sane and conscious; they are not compelled to commit them; and they are not so intoxicated that they cannot entertain the states of mind

which their crimes may require. Thus it makes good
sense to say that if any of these unusual features are to
be injected into the case, the defendant is the one to do
it; it would not be sensible to make the prosecution in all
cases prove the defendant's sanity, sobriety and freedom
from compulsion.

1 Wayne R. LaFave, Substantive Criminal Law § 1.8(c) at
82-83 (2d ed. 2003). Other commentators have noted that even
when a defense serves to negate an element of the crime, "[t]he
defendant may have to bear a burden of production if he seeks
to inject a particular theory for or seeks an instruction suggest-
ing a particular theory for the absence of the required element
. . . ." 1 Paul H. Robinson, Criminal Law Defenses § 4(a)(2)
at 23 (1984).

With regard to the issue whether intoxication was involun-
tary under § 29-122, it is an "unusual feature" that intoxication
is involuntary as set forth in the statute. Therefore, regardless
of whether involuntary intoxication is a defense that negates
the mental state required to commit a crime or whether it is
a separate issue, it is the sort of issue that, if the defendant
wishes to inject the issue into the case, does not violate due
process to put the burden on the defendant to produce at least
some evidence that his or her intoxication was involuntary. In
the present case, Abejide produced no evidence to show that
his intoxication was involuntary and the evidence presented by
the State did not so indicate. Given the absence of evidence to
support a finding of involuntary intoxication, we therefore con-
clude that the district court did not violate due process when it
refused Abejide's proposed instruction.

For completeness, we note that the facts of this case do not
require us to address—and we do not address—whether other
features of § 29-122 comply with due process requirements.
In this regard, because there was no evidence that Abejide's
intoxication was involuntary, we need not consider whether
§ 29-122 may constitutionally require "clear and convinc-
ing evidence" that intoxication was involuntary. In addition,

because Abejide failed to meet the burden of production, we need not consider whether § 29-122 may constitutionality require the defendant to bear the burden of persuasion on the issue of involuntary intoxication.

Based on the facts of this case, we conclude that the district court did not err and did not violate Abejide's due process rights when it refused Abejide's instruction regarding involuntary intoxication.

## 2. There Was Sufficient Evidence to Support Abejide's Convictions

Abejide claims that the evidence in this case was insufficient to support his convictions for attempted first degree sexual assault and terroristic threats. He generally argues that the only evidence against him on certain elements was the victim's testimony at trial and that the victim's testimony was not credible. The credibility of witnesses was for the jury to decide. Therefore, if the jury found the testimony in this case to be credible, we determine that there was sufficient evidence to support Abejide's convictions. See *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015).

With regard to the conviction for terroristic threats, Abejide notes that at trial, the victim testified on direct examination that he had threatened to "'knock her out'" but that on cross-examination, he presented evidence of the victim's pretrial deposition testimony in which she denied that Abejide had verbally threatened her. Brief for appellant at 29. Abejide contends that the victim's trial testimony was the only evidence to support a finding that he had threatened the victim and that such testimony was contradicted by the victim's own deposition testimony. With regard to both convictions, Abejide asserts that the victim's testimony as a whole was not credible because portions of her testimony were contradicted by the testimony of other witnesses and she frequently testified that she did not know or could not recall certain details due to her intoxication at the time.

Having reviewed the evidence in this case, in particular the testimony of the victim and the testimony of the police officer who came upon the scene during the incident, we conclude that there was sufficient evidence, if believed, to support the convictions. Abejide's arguments focus on his claim that the victim was not credible because of inconsistencies in her testimony and her inability to clearly remember certain events. In this regard, we observe that the inconsistencies in the victim's testimony were demonstrated to the jury through cross-examination, and therefore, the jury was in a position to fully evaluate the victim's testimony.

In reviewing for sufficiency of the evidence, we do not resolve conflicts in the evidence or pass on the credibility of witnesses, because such matters are for the finder of fact. See *Custer, supra*. By its verdict, the jury as fact finder determined, based on all the evidence, including that of the victim, that the crimes charged had been committed. We determine that the evidence admitted at trial, viewed and construed most favorably to the State, was sufficient to support the convictions for attempted first degree sexual assault and terroristic threats.

### 3. Abejide's Claims of Ineffective Assistance of Trial Counsel Are Either Without Merit or Not Reviewable on Direct Appeal

Abejide claims that he received ineffective assistance of trial counsel for a number of reasons. We conclude with respect to each claim that either the claim is without merit or that the record on direct appeal is insufficient to determine the merits of the claim.

[9,10] The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). The determining factor is whether the record is sufficient to adequately review the question. *Id*. An ineffective

assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *Id*.

Abejide first claims that he received ineffective assistance when counsel failed to move to dismiss the attempted sexual assault charge. We determined above that the evidence presented by the State was sufficient to support the convictions. The district court would have properly overruled a motion to dismiss, and Abejide cannot show that he was prejudiced by counsel's purported failure to so move. Therefore, such claims are without merit.

Abejide also claims that he received ineffective assistance because trial counsel failed to adequately prepare his defense. He asserts that counsel did not diligently pursue potential witnesses to testify on his behalf and that counsel did not adequately present a consent defense, either in opening statement, in cross-examination of the victim, or in closing argument. Abejide's claims involve allegations regarding evidence and arguments not presented at trial and not present in the record, and furthermore, his claims would require proof of matters outside the trial record. We therefore conclude that these claims cannot be adequately reviewed in this direct appeal.

Abejide finally claims that trial counsel failed to properly challenge the constitutionality of § 29-122. As we determined above, the district court did not violate due process when it refused Abejide's proposed instruction on involuntary intoxication. Therefore, to the extent the constitutionality of § 29-122 was implicated by the facts of this case, Abejide's challenge was without merit. Therefore, Abejide's claim of ineffective assistance of counsel with regard to counsel's presentation of the challenge is without merit.

In sum, Abejide's claims regarding trial counsel's failure to file a motion to dismiss and to properly challenge the constitutionality of § 29-122 are without merit. Abejide's claim of ineffective assistance of counsel with respect to presenting a proper defense cannot be reviewed in this direct appeal.

4. The Court Properly Used Abejide's Prior
SORA Violation Convictions to Find
That He Was a Habitual Criminal,
and His Sentence Was Not
Otherwise Excessive

Abejide finally claims that the court imposed an excessive sentence. He argues, inter alia, that he should not have been sentenced as a habitual criminal, because the court improperly considered two prior convictions for violations of the SORA to support its finding that he was a habitual criminal. We conclude that such convictions could be used to support the habitual criminal determination and that the court did not otherwise abuse its discretion in sentencing.

(a) Habitual Criminal Enhancement

We first address Abejide's claim that the district court erred when it used the prior SORA violation convictions to support the habitual criminal determination. As explained below, we reject this assignment of error and affirm the district court's finding that Abejide was a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 2008).

Abejide was found to be a habitual criminal and was sentenced as such pursuant to § 29-2221, which provides:

> Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be a habitual criminal . . . .

The district court found that Abejide was a habitual criminal based on evidence of three prior convictions: a conviction in 1994 for attempted first degree sexual assault of a child, for which he was sentenced to imprisonment for 6 to 9 years; a conviction in 2007 for a violation of the SORA, second offense, for which he was sentenced to imprisonment for 2 to 4 years; and a conviction in 2011 for a violation of the SORA

for which he was sentenced to imprisonment for 20 months to 4 years.

Abejide acknowledges that the current felony convictions for attempted first degree sexual assault and terroristic threats are felonies subject to application of the habitual criminal statute. However, he argues that the two prior convictions for violations of the SORA were, by their nature, subsequent offenses, and that as such, the SORA convictions cannot serve as prior convictions to support a finding that he was a habitual criminal in the current proceeding. Abejide claims that using the SORA prior convictions results in a "double penalty enhancement," which is invalid under *State v. Chapman*, 205 Neb. 368, 287 Neb. 697 (1980). Brief for appellant at 37.

In *Chapman, supra*, a jury found the defendant guilty of operating a motor vehicle while under the influence of alcohol. After a hearing, the trial court determined that the defendant had three previous convictions for driving while intoxicated and the court therefore found that the current offense should be treated as a third offense. Because the current offense in *Chapman* was found to be a "third offense," it was reclassified from a misdemeanor to a felony—unlike the "true" felonies at issue in the current appeal. See, similarly, *Goodloe v. Parratt*, 605 F.2d 1041, 1048 (8th Cir. 1979) (generally noting distinction between enhanced offenses and "'true'" felonies). After an additional hearing, the court in *Chapman* determined that the defendant should be sentenced as a habitual criminal. The two prior convictions used to support the habitual criminal finding were a conviction for driving while intoxicated, third offense, and a conviction for malicious destruction of property.

In *Chapman*, we held that "offenses which are felonies because the defendant has been previously convicted of the same crime do not constitute 'felonies' within the meaning of prior felonies that enhance penalties under the habitual criminal statute." 205 Neb. at 370, 287 N.W.2d at 698. Among other observations, we disapproved of the trial court's use of such prior convictions under the habitual criminal statute, because

such use resulted in impermissible "double penalty enhancement through application of both a specific subsequent offense [provision found in the driving under the influence] statute and a habitual criminal statute." 205 Neb. at 370, 287 N.W.2d at 699. We therefore determined that the defendant's sentencing was controlled by the driving under the influence statutes and that he was exempt from operation of the habitual criminal provisions.

Although Abejide does not cite the case, his argument may be more similar to and could arguably find support in *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999). In *Hittle*, the defendant was convicted of felony flight to avoid arrest and felony driving under a 15-year license suspension. The trial court found that the defendant was a habitual criminal based on evidence that he had two prior convictions, each of which resulted in imprisonment for not less than 1 year. One of the prior convictions was for operating a motor vehicle while his operator's license was suspended or revoked.

The defendant in *Hittle* cited *Chapman, supra*, to support his argument that driving under suspension is a "subsequent offense" that enhances the punishment for a prior conviction for driving under the influence. 257 Neb. at 355, 598 N.W.2d at 29. In *Hittle*, we said that a conviction for driving under suspension was not a "subsequent offense" in the same sense as the conviction for driving under the influence, third offense, was a "subsequent offense" of driving under the influence in *Chapman*. However, in *Hittle*, we noted that the statute making it an offense to drive under suspension was an integral "part of the statutory scheme designed by the Legislature to criminalize the operation of a motor vehicle while under the influence of alcoholic liquor or drugs," 257 Neb. at 355-56, 598 N.W.2d at 29, and that one can commit the offense of driving under suspension only after having first committed multiple offenses of driving under the influence.

In *Hittle*, we said that "in a real sense, the penalty for this particular act [of driving under suspension] has been enhanced

by virtue of the defendant's prior violations of other provisions within the same statute." 257 Neb. at 356, 598 N.W.2d at 29. We therefore held in *Hittle* that "a felony conviction for driving under a suspended license . . . may not be used either to trigger application of the habitual criminal statute or as a prior offense for purposes of penalty enhancement pursuant thereto." *Id*. We specifically determined in *Hittle* that because the defendant's prior conviction for driving under suspension could not be considered as a prior conviction for purposes of the habitual criminal determination, the trial court had erred in sentencing the defendant as a habitual criminal.

In the present case, two of Abejide's prior convictions were for violations of the SORA. And because Abejide acknowledges that the two current felonies are suitable true felonies subject to the habitual criminal statute, Abejide's arguments are directed to the propriety of using the SORA offenses as prior convictions. In particular, Abejide argues that a conviction for a violation of the SORA "seeks to further punish an individual for a sex offense conviction if they [sic] do not abide by the SORA requirements." Brief for appellant at 37. In effect, his argument is that one can violate Neb. Rev. Stat. § 29-4011 (Supp. 2015), which generally makes it an offense to violate a registration requirement of the SORA, only after having first committed a sex offense that required the defendant to be subject to the SORA and that therefore, § 29-4011 is part of a statutory scheme to criminalize and punish the underlying sex offense. Abejide's argument is reminiscent of *Hittle*.

At this juncture, it is important to distinguish the facts of this case compared to the facts in *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980), and *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999). The difference brings important language contained in the habitual criminal statute into greater focus and demonstrates why application of the habitual criminal statute to enhance Abejide's sentence is appropriate. In *Hittle*, we noted the difference between a triggering offense, which is the offense for which the defendant is currently being

sentenced, and a prior offense, which is one of the offenses that establishes that the defendant was a habitual criminal at the time he or she committed the triggering offense. In *Chapman*, both the triggering offense and one of the prior offenses were convictions for driving under the influence, third offense. In *Hittle*, one of the triggering offenses and one of the prior offenses were convictions for driving under suspension.

In the present case, Abejide's triggering offenses are felony convictions for attempted first degree sexual assault and for terroristic threats; Abejide makes no argument that either of these felony offenses cannot be a triggering offense for habitual criminal enhancement. Instead, Abejide's contentions focus on the prior convictions; his argument is solely that his convictions for violations of the SORA cannot be prior offenses used to establish his status as a habitual criminal at the time he committed the triggering offenses in this case. For the reasons discussed below, we determine that the SORA convictions may be used as prior convictions under the habitual criminal statute, but we take this opportunity to indicate that we erroneously suggested in *Chapman* and *Hittle* that driving under the influence, third offense, and driving under suspension, respectively, could not be used as prior convictions where a defendant is sentenced under the habitual criminal statute.

[11] As noted above, the habitual criminal statute, § 29-2221, describes the triggering offense as "a felony," but it describes the prior convictions as crimes for which the defendant has been "convicted . . . , sentenced, and committed to prison . . . for terms of not less than one year each." By its terms, § 29-2221 requires the triggering offense to be "a felony" before the habitual criminal statute will apply to the sentencing of the triggering offense. But in order to be one of the prior convictions that establishes habitual criminal status, § 29-2221 does not require that the prior conviction was a "felony" per se; instead, it requires that the prior conviction resulted in a sentence of imprisonment for a term "of not less than one year."

In *State v. Ramirez*, 274 Neb. 873, 883, 745 N.W.2d 214, 222 (2008), we recognized that a "felony conviction" and "a prior conviction resulting in a term of imprisonment of no less than 1 year" are not coextensive. In *Ramirez*, we determined that a previous felony "conviction for manufacturing or distributing marijuana" could be used both to prove an element of the triggering offense of being a felon in possession of a firearm under Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2014), which required that the defendant had "previously been convicted of a felony," as well as to prove a prior conviction under § 29-2221 to establish that the defendant was a habitual criminal and should be sentenced as a habitual criminal for the offense of being a felon in possession. 274 Neb. at 877, 745 N.W.2d at 219. We reasoned that "the predicates for §§ 28-1206 and 29-2221 [are not] necessarily coextensive," because the "predicate for violating § 28-1206 is a felony conviction, which may or may not result in the term of imprisonment of 'not less than one year' necessary to establish a predicate [prior conviction] for sentence enhancement under § 29-2221." 274 Neb. at 883, 745 N.W.2d at 222. We therefore recognized in *Ramirez* that the description of prior convictions in § 29-2221 focuses on the length of the sentence and are not the equivalent of prior "felonies."

The distinction between the descriptions in § 29-2221 of the triggering offense and the prior convictions which we recognized in *Ramirez* had been blurred in *State v. Chapman*, 205 Neb. 368, 370, 287 N.W.2d 697, 698 (1980), when we stated that prior "offenses which are felonies because the defendant has been previously convicted of the same crime do not constitute 'felonies' within the meaning of *prior felonies* that enhance penalties under the habitual criminal statute." (Emphasis supplied). As we noted above, contrary to the expression stated in *Chapman*, § 29-2221 does not describe the prior convictions as "prior felonies" but instead as prior convictions that resulted in a term of imprisonment of "not less than one year." And as we recognized in *Ramirez*, a "felony conviction" and "a prior

conviction resulting in a term of imprisonment of no less than 1 year" are not coextensive. 274 Neb. at 883, 745 N.W.2d at 222. Thus, the description that applies to the triggering offense, described in § 29-2221 as a "felony," does not necessarily apply to prior convictions which are described differently in the same statute. In sum, under the habitual criminal statute, the triggering offense must be "a felony," but the focus on prior convictions must simply be on convictions which resulted in imprisonment of not less than 1 year.

Abejide has recognized that his triggering offenses are true felonies and, as such, can trigger application of the habitual criminal statute, § 29-2221. Abejide's triggering felonies are unlike the triggering felonies discussed in *Chapman, supra*, and *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999). In *Chapman*, the crime of driving under the influence, third offense, was a misdemeanor enhanced to a felony, and in *Hittle*, the triggering crime of driving under suspension was a felony as a result of a statutory scheme based on repetition of misdemeanor driving under the influence offenses. For triggering offense purposes, they were not "true" felonies.

Abejide raises an issue regarding double penalty enhancement with respect to the prior convictions; however, the concern to avoid double penalty enhancement is more properly directed to the propriety of penalizing the current triggering crime under the habitual criminal statute. Although double penalty enhancement is disfavored, see *Chapman, supra*, we have long recognized that the habitual criminal statute is an enhanced penalty permissible to punish repetitive criminal conduct reflected in the felony case now before the court. See *State v. Ramirez*, 274 Neb. 873, 745 N.W.2d 214 (2008). Under the habitual criminal statute, impermissible double penalty enhancement is a concept consideration which is applied to the triggering crime, but not applied to a prior conviction as urged by Abejide. The habitual criminal statute penalizes current crimes but it is not a further punishment or double penalty for the previous convictions. The role of the previous convictions

in the habitual criminal statute is to demonstrate that the defendant has been twice convicted of crimes each of which resulted in imprisonment of "not less than one year."

In *Chapman* and *Hittle*, we reasoned that the crimes of driving under the influence, third offense, and driving under suspension, respectively, were part of discrete statutory schemes which already incorporated enhancement mechanisms and could not be further enhanced as triggering felonies under § 29-2221. The reasoning does not lead to the conclusion that convictions of such crimes can never be used as prior convictions under the habitual criminal statute.

The habitual criminal statute does not enhance the penalty for prior convictions; it is applied to the penalty for the triggering offense. If the penalty for the triggering offense is enhanced only pursuant to the habitual criminal statute, the fact that the penalty for one of the prior convictions was itself enhanced does not result in a double penalty enhancement of the triggering offense. As noted, the habitual criminal statute is focused on enhancing the penalty for the current conviction when the defendant has prior convictions of a certain type; the Legislature chose to describe that type of crime in terms of the sentence imposed rather than in terms of the classification of the prior offense as a felony.

Given the foregoing understanding, *Chapman* and *Hittle* should have been limited to holding that driving under the influence, third offense, and driving under suspension were ineligible to serve as triggering offenses under § 29-2221. We disapprove *State v. Chapman*, 205 Neb. 368, 287 N.W.2d 697 (1980), and *State v. Hittle*, 257 Neb. 344, 598 N.W.2d 20 (1999), to the extent they suggest or hold that the prior convictions of driving under the influence, third offense, and driving under suspension, each resulting in imprisonment of not less than 1 year, cannot be used as prior convictions to establish habitual criminal status when applying § 29-2221. Instead, such convictions may be used as prior convictions under the habitual criminal statute as long as they meet the statutory

requirement that such convictions resulted in terms of imprisonment for not less than 1 year.

In the present case, each of the two current offenses is a felony and Abejide had prior convictions for violations of the SORA for which he was sentenced to terms of imprisonment for not less than 1 year. Whether the SORA offenses could serve as the triggering offense for a habitual criminal enhancement is not before us. However, it was proper to use them as prior convictions, because they each met the requirement under § 29-2221 of a sentence of "not less than one year." We therefore determine that the district court did not err when it found Abejide to be a habitual criminal and sentenced him accordingly.

### (b) Excessiveness in General

Having determined that the court did not err when it found Abejide to be a habitual criminal, we consider his argument that his sentences were excessive. We first note that at the time of the offenses in this case, attempted first degree sexual assault was a Class III felony pursuant to Neb. Rev. Stat. § 28-319(2) (Reissue 2008) and Neb. Rev. Stat. § 28-201(4)(b) (Cum. Supp. 2014), and making terroristic threats was a Class IV felony pursuant to § 28-311.01(2). At the time, the sentencing range for a Class III felony was imprisonment for 1 to 20 years, and the sentencing range for a Class IV felony was imprisonment for a maximum of 5 years. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). However, because Abejide was found to be a habitual criminal, § 29-2221(1) set the sentencing ranges for both felony convictions as imprisonment for a mandatory minimum of 10 years and a maximum of 60 years. Therefore, the sentences of imprisonment for 10 to 20 years for attempted first degree sexual assault and for 10 to 10 years for terroristic threats were within statutory limits.

Because the sentences were within statutory limits, we review the sentences imposed for an abuse of discretion. See *State v. Russell*, 292 Neb. 501, 874 N.W.2d 8 (2016). With

regard to both sentences, we note that by the operation of § 29-2221(1), the court was required to impose a mandatory minimum sentence of 10 years for each offense; therefore, because the court had no discretion to impose a minimum sentence of less than 10 years and because the court imposed the mandatory minimum for each conviction, it did not abuse its discretion with regard to the minimum. With regard to the sentence for terroristic threats, the court imposed a maximum term of 10 years which was equal to the mandatory minimum sentence. Therefore, because the court imposed the shortest sentence permissible under § 29-2221(1), there can be no argument that the court abused its discretion or imposed an excessive sentence for the terroristic threats conviction.

[12] With regard to the conviction for attempted first degree sexual assault, the court imposed a maximum sentence of 20 years. In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). Abejide contends that the district court did not properly consider his criminal history. Abejide asserts that although his history admittedly included convictions for first degree sexual assault and attempted first degree sexual assault of a child, such convictions were in 1977 and 1993, respectively, and since the time of these prior offenses, his criminal history reflects convictions only for less serious offenses. He also asserts that the court failed to adequately consider that the victim in this case did not suffer physical injury and did not complete a victim impact statement.

Abejide further argues that, in addition to the length of the sentences, the court abused its discretion when it ordered the sentences to be served consecutive to one another. He cites *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006),

in which we found an abuse of discretion in sentencing, and for relief ordered, inter alia, that the sentences for two of the convictions should run concurrently because both offenses resulted from the same act. Our disposition in *Iromuanya* was not a categorical statement regarding whether sentences must be ordered to be served concurrently, and we note further that in other cases, we have found that there was not an abuse of discretion when a court ordered sentences to be served consecutively where the charged offenses were alleged to have arose from a single transaction. See *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

We find no merit to Abejide's claim that the district court imposed excessive sentences based on either the maximum term for the attempted first degree sexual assault or its order directing the sentences to run consecutively. The court stated in its sentencing order that it based its sentencing on "the nature and circumstances of the crimes and the history, character and condition" of Abejide and its determination that "imprisonment of [Abejide] is necessary for the protection of the public because a lesser sentence would depreciate the seriousness of his crimes and promote disrespect for the law." Given the statutes, the record before us, and the court's stated reasoning, we do not think that the considerations argued by Abejide indicate the court abused its discretion.

## VI. CONCLUSION

Having rejected Abejide's assignments of error, we affirm his convictions and sentences for attempted first degree sexual assault and terroristic threats.

Affirmed.

Stacy, J., not participating.