IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. GRANT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT W. GRANT, APPELLANT.

Filed June 14, 2016.    No. A-15-828.

Appeal from the District Court for Douglas County: DUANE C. DOUGHERTY, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and John J. Jedlicka for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

PIRTLE, RIEDMANN, and BISHOP, Judges.

BISHOP, Judge.

Following a jury trial, Robert W. Grant was convicted of third degree assault on an officer, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-931 (Cum. Supp. 2014), and of terroristic threats, a Class IV felony, pursuant to Neb. Rev. Stat. § 28-311.01 (Reissue 2008). The district court for Douglas County sentenced him to 5 to 5 years' imprisonment for third degree assault on an officer and 20 months' to 5 years' imprisonment for terroristic threats. On appeal, Grant challenges his convictions and sentences. For the following reasons, we affirm.

BACKGROUND

The events giving rise to the criminal charges in this case occurred while Grant was on trial in the district court for Douglas County in a separate criminal case. On October 27, 2014, during the sixth day of trial in that case, just after breaking for lunch and outside of the presence of the jury, Grant hit one of the court deputies. See *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

Other deputies restrained Grant, and while being transported away, Grant said something to the effect of, "I will punch all of you mother fuckers, I have people on the outside that will get you." As a result of those events, Grant was charged by information in the present case with third degree assault on an officer (count I) and terroristic threats (count II).

After being so charged, Grant filed a motion to quash and a motion for a bill of particulars. In the motion to quash, Grant asked that the information be quashed, because count II alleging terroristic threats named "no victim or set of victims." Rather, count II alleged only that "[o]n or about October 27, 2014, [Grant] did then and there threaten to commit a crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror." Grant argued that "the specific identity or identities [of the victim(s)] are crucial to the elements [of terroristic threats] and ergo crucial for the defense attorneys to prepare adequately for trial." In the motion for a bill of particulars, Grant asked the State to provide a bill of particulars specifying the victim or victims of count II.

At a hearing on Grant's two motions, the State indicated it was willing to provide the names of the deputies who were the alleged victims of the terroristic threats charge. Based on the State's willingness to provide the names, the court sustained Grant's motion for a bill of particulars. The court then asked Grant's counsel, "And then that would handle your motion to quash . . . would you agree?" Defense counsel responded affirmatively, and the court found that the motion to quash was moot.

The State subsequently filed a bill of particulars indicating that the victims of count II were "Sheriff's Deputy J. Williamson," "Sheriff's Deputy R. Rogers," "Sheriff's Deputy F. Christiansen," and "Sheriff's Sergeant K. Peterson."

Grant also filed a pretrial motion in limine requesting that the court exclude any testimony relating to statements he made threatening his attorneys or the public defenders. The record reflects that during a conference in the trial judge's chambers, the State consented to this request. Accordingly, the court entered an order sustaining Grant's motion in limine.

On June 15, 2015, the matter proceeded to trial. During jury selection, the State used three of its peremptory challenges to strike jurors Nos. 16, 18, and 23, all of whom were African-American, and one of its peremptory challenges to strike juror No. 19, who was of Middle Eastern descent. Grant is African-American, and his counsel objected to the State's peremptory challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). During a side bar, counsel for both sides agreed that five members of the full 27-member jury panel were African-American and one was of Middle Eastern descent. As a result of the State's peremptory challenges, only two African-American jurors were selected for the 13-member jury.

The State offered the following explanations of its use of peremptory challenges. It struck juror No. 16 because he was single and worked at McDonald's, which was "not a very significant job," and because he "seemed very disinterested in the process," appearing to doze off at one point. The State struck juror No. 18 because she was single and worked at "Victoria Secret in the cosmetics department," which was not "a very significant job," and because she was "very short and curt" in some of her responses. The State struck juror No. 19 because, although he understood the questions posed to him, he was soft-spoken in his responses and seemed to have difficulty with the English language, requiring the court reporter to clarify his responses. The State struck juror No. 23 because "she sat with her arms crossed through the entire voir dire, and gave off indications

that she was very disinterested in being here." The State explained that it had used peremptory challenges to strike non-minority jurors as well for having a "not significant" job or for appearing disinterested.

After hearing the State's explanations for its peremptory challenges, the court inquired as to whether the jury would learn Grant's race, given that Grant had declined to be present during trial, and given that "we agreed that the photos [of Grant] are not going to be shown to the jury." (It is unclear to what agreement the court was referring.) Grant's counsel agreed that it "could well be" that the jury would not learn Grant's race. The court then overruled Grant's *Batson* challenge.

Following a lunch recess, the court addressed preliminary matters with counsel outside of the jury's presence. In particular, the court addressed the issue of whether a photo of Grant would be published to the jury. Grant's counsel indicated he was willing to stipulate that the State's photo of Grant was sufficient to establish his identity as the person "who was there on October 27, 2014." The State responded that "when we made the record on the *Batson* [challenge] . . . there was some confusion as to whether or not there would actually be a physical photo offered of [Grant]." The State argued that it was necessary to have one of its witnesses identify Grant as the individual who committed the crimes charged in the information. The court ruled that the State could offer the photograph through one of its witnesses and publish the photo to the jury. The court then explained to Grant's counsel:

> As to your earlier *Batson* motion . . . I guess I would let you know that at the time I was not thinking the photo was going to be seen by the jury, and now I know that it is. That does not change my decision in any way. It wasn't that significant of my decision -- part of my decision. So I assure you that remains the same decision of the Court.

At trial, the State's first witness was Douglas County Sheriff's Deputy Adam Marcotte, who testified that on October 27, 2014, he was on duty providing security at the Douglas County courthouse. While clearing out the courtroom to which he was assigned, he observed that Grant was not leaving as deputies had requested. Grant became very agitated and began "throwing his arms up" and becoming "very verbal." Deputies continued to try to negotiate with Grant without success. Deputy Marcotte placed his right hand on Grant's chest to try to make him sit in a chair. Grant then struck Deputy Marcotte twice in the head with a closed fist. A struggle ensued, and deputies restrained Grant.

The State's next witness was Sergeant Kristopher Peterson of the Douglas County Sheriff's Office. He testified that while on duty on October 27, 2014, he received a distress call from a courtroom deputy. He responded to the courtroom and observed several deputies trying to restrain an individual later identified as Grant. After the deputies restrained Grant using handcuffs and leg irons, the deputies began transporting Grant to the "holding tank" for processing, which required using the courthouse's prisoner elevator. While Sergeant Peterson was in the elevator with Grant, Grant "made several statements to the effect of 'I will punch all of you mother-fuckers. I have people on the outside that will get you. I will punch my defense attorneys and stuff.'"

At this point, defense counsel objected and requested a side bar. During the side bar, defense counsel moved for a mistrial based on the State's violation of the court's ruling on Grant's motion in limine. Defense counsel alternatively moved to strike the portion of the sergeant's

testimony addressing Grant's threats to his attorneys. The court took the motions under advisement and indicated counsel could address them again at the next recess.

Following the side bar, Sergeant Peterson testified that Grant said several times "I will punch all of you mother-fuckers and I have people on the outside." Grant's demeanor when making the threatening statements was "very upset, very angry" and "very violent." On the elevator with Grant and Sergeant Peterson was Deputy Manak and several other deputies, whose identities the sergeant could not recall. On cross-examination, Sergeant Peterson agreed that Grant was fully restrained and surrounded by deputies when he made the threatening statements on the elevator.

At the conclusion of Sergeant Peterson's testimony, the court took a recess. During the recess, outside of the jury's presence, the court found that the sergeant's testimony violated the court's ruling on Grant's motion in limine. However, the court further found that the testimony was "very minimal" and did not "in any way prejudice or cause enough harm to the defendant's right to a fair trial . . . to rise to the level of a mistrial." The court denied the motion for mistrial, but sustained the motion to strike. When the jury returned to the courtroom following the recess, the court instructed it to "disregard the following statement that was made by deputy [sic] Peterson: 'I will punch my defense attorneys and stuff,' end of statement."

The State's final witness was Douglas County Sheriff's Deputy Kevin Manak. Deputy Manak's testimony was consistent with the testimony of Deputy Marcotte and Sergeant Peterson. Deputy Manak testified that Grant repeated "probably a dozen times" the statements that he would "punch all you mother-fuckers" and that he had "people on the outside."

After the State rested, defense counsel rested without presenting evidence. At a jury instruction conference outside of the jury's presence, defense counsel objected to the State's jury instruction No. 3 on the basis that it did not list the alleged victims of count II alleging terroristic threats. The State responded that the instruction accurately stated what was alleged in the information. The instruction stated, in pertinent part:

> In Count 2 of the Information, Defendant is charged with Terroristic Threats. The State alleges in substance that: On or about October 27, 2014, in Douglas County, Nebraska, Robert W. Grant, did then and there threaten to commit a crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror.
>
> To these charges the Defendant has entered pleas of not guilty. The charges and the Defendant's pleas make up the issues which you will determine by your verdicts.

The court agreed with the State that the instruction reflected the language of count II and approved the instruction. The court also approved jury instruction No. 9, which stated, in pertinent part:

> Under Count 2 of the Information, depending on the evidence, you may return one of several possible verdicts. You may find the Defendant: 1. Guilty of Terroristic Threats; or 2. Not Guilty. . . .
>
> The material elements which the State must prove, by evidence beyond a reasonable doubt, in order to convict the Defendant of the crime of terroristic threats as charged in the information, are: 1. That on or about October 27, 2014, in Douglas County, Nebraska, the Defendant, Robert W. Grant, threatened to commit a crime of violence to Deputy Kristopher Petersen [sic] and Deputy Kevin Manak; [and] 2. That the threat was made with the intent to terrorize another or in reckless disregard of the risk of causing such terror.

The State has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements necessary for conviction.

After receiving its instructions and deliberating for approximately 1 hour, the jury returned verdicts of guilty on counts I and II. On August 5, 2015, following a brief sentencing hearing at which Grant chose not to appear, the court sentenced Grant to 5 to 5 years' imprisonment for third degree assault on an officer (count I) and 20 months' to 5 years' imprisonment for terroristic threats (count II). The court did not request a presentence investigation prior to sentencing and made no findings, other than referencing Grant's "history and record." The court ordered that the sentences would be served concurrently to each other but consecutive to the sentences in case No. CR13-2995, in which Grant was convicted of first-degree murder and use of a deadly weapon to commit a felony and sentenced to consecutive terms of life imprisonment and 50 to 50 years' imprisonment. See *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016) (affirming Grant's convictions and sentences in that case).

Grant timely appealed to this court.

ASSIGNMENTS OF ERROR

Grant assigns that the district court erred in (1) overruling his objection pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), to the State's use of peremptory challenges; (2) denying his motion to quash, "which ultimately led to [Grant] being denied due process to a [sic] proper defense, given the confusion that resulted from the Jury Instructions regarding the identity of the victims"; (3) overruling his motion for mistrial when, in violation of the ruling on his motion in limine, the State questioned its witness regarding a statement Grant made threatening his defense attorneys; (4) giving contrary jury instructions regarding the elements of terroristic threats; and (5) imposing excessive sentences.

STANDARD OF REVIEW

An appellate court reviews de novo the facial validity of an attorney's race-neutral explanation for using a peremptory challenge as a question of law. An appellate court reviews for clear error a trial court's factual determination regarding whether a prosecutor's race-neutral explanation is persuasive and whether the prosecutor's use of a peremptory challenge was purposefully discriminatory. *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the trial court abused its discretion. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

Whether a court's jury instructions were correct is a question of law. On a question of law, an appellate court is obligated to reach a conclusion independent of the determination of the court below. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015).

ANALYSIS

Batson *Challenge*.

Grant's first assignment of error is that the district court erred in overruling his objection pursuant to *Batson v. Kentucky, supra*, to the State's use of peremptory challenges. He contends that "the State's explanations do not rise to the level to justify using four of six strikes on minority members of the panel." Brief for appellant at 13. Grant further notes that the district court overruled his *Batson* challenge immediately after inquiring into whether the jury would see his photo; however, after the court determined that Grant's photo would be published to the jury, it indicated that the photo was not a significant factor in its decision to overrule the *Batson* challenge.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the U.S. Supreme Court held that a prosecutor's privilege to strike individual jurors through peremptory challenges was subject to the commands of the Equal Protection Clause. *State v. Oliveira-Coutinho, supra*. A prosecutor is ordinarily entitled to exercise permitted peremptory challenges for any reason at all, if that reason is related to his view concerning the outcome of the case. *Id*. But the Equal Protection Clause forbids the prosecutor from challenging potential jurors solely because of their race. *Id*.

Courts use a three-step process to determine whether the State impermissibly struck a prospective juror based on race:

First, a defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge because of race. Second, assuming the defendant made such a showing, the prosecutor must offer a race-neutral basis for striking the juror. And third, the trial court must then determine whether the defendant has carried his or her burden of proving purposeful discrimination. The third step requires the trial court to evaluate the persuasiveness of the justification proffered by the prosecutor. But the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

*State v. Oliveira-Coutinho*, 291 Neb. 294, 320-21, 865 N.W.2d 740, 763 (2015). Where the State has offered race-neutral explanations for its use of peremptory challenges and the trial court has decided the ultimate question of intentional discrimination, the preliminary issue of whether the defendant made a prima facie showing is moot. *Id*. In such a situation, the only questions for the appellate court are whether the State's explanations were race neutral and whether the trial court's final determination regarding purposeful discrimination was clearly erroneous. *Id*.

At this point, we acknowledge Grant's observation that the district court overruled his *Batson* challenge immediately after inquiring into whether the jury would see Grant's photo, but later indicated that the photo was not a significant factor in its decision to overrule the *Batson* challenge. Although the court's inquiry into the use of Grant's photo raises some question about its reasons for overruling the *Batson* challenge, the court gave no explanation on the record for its decision. Therefore, we have no reason to doubt the court's subsequent statement that the photo was not a significant factor in its decision.

Notably, the court required the State to provide explanations for its use of peremptory challenges against these four jurors. Only after hearing the State's explanations did the court

overrule Grant's *Batson* challenge. Therefore, we conclude the court decided the ultimate question of intentional discrimination in the State's favor, and the only questions for us to decide are whether the State's explanations were race neutral and whether the trial court's final determination regarding purposeful discrimination was clearly erroneous. See *State v. Oliveira-Coutinho, supra*.

We begin by determining whether the State's explanations were race neutral, which is the second step of an analysis under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Although the prosecutor must present a comprehensible reason for a peremptory challenge, the second step of the analysis does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. *State v. Thorpe*, 280 Neb. 11, 783 N.W.2d 749 (2010). The Nebraska Supreme Court has deemed explanations for peremptory challenges to be race neutral: (1) when a prospective juror's residence was close to the crime scene, (2) when a prospective juror had a close family member who was a convicted felon, (3) when a prospective juror was employed at a church, and (4) when a prospective juror was young and single and might be attracted to the defendant. *Id*. These examples "illustrate that only inherently discriminatory explanations are facially invalid." *Id*. at 18, 783 N.W.2d at 757.

We conclude that the State's explanations for its peremptory challenges were facially race neutral. The State's proffered reasons were similar to those that the Nebraska Supreme Court has deemed to be race neutral and not inherently discriminatory. For example, in *State v. Myers*, 258 Neb. 300, 603 N.W.2d 378 (1999), the court held it was proper to deny a *Batson* challenge where the State struck a prospective juror who was unemployed and seemed to have a disagreeable attitude, as well as a prospective juror who was elderly and had difficulty paying attention. Similarly, in *State v. Walker*, 272 Neb. 725, 724 N.W.2d 552 (2006), the court upheld the striking of a prospective juror for the reason that she was employed at a church, even though it was unclear why the juror's employment concerned the State; it was sufficient that the explanation was not racially motivated. Likewise, here, there was nothing about the State's explanations that suggested the peremptory challenges were motivated by race.

The next question is whether the court committed clear error in evaluating the persuasiveness of the State's explanations for its strikes, which concerns the third step of a *Batson v. Kentucky, supra*, inquiry. See *State v. Thorpe, supra*. The U.S. Supreme Court has explained that the third step of the inquiry involves evaluating the prosecutor's credibility; such credibility determinations lie within the peculiar province of the trial judge and require deference to the trial court. *State v. Oliveira-Coutinho*, 291 Neb. 294, 865 N.W.2d 740 (2015).

After reviewing the record and taking into consideration that the district court was in the best position to evaluate the prosecutor's credibility, we conclude that the court did not commit clear error in evaluating the persuasiveness of the State's explanations. Although the State did not explain what it meant when it said jurors Nos. 16 and 18 had jobs that were not "very significant," the State further explained that it struck at least one non-minority juror for the same reason. Also, the State explained that jurors Nos. 16 and 23 appeared disinterested, and that it struck at least one non-minority juror for this reason as well. The State struck juror No. 19 for the practical reason that he seemed to have difficulty communicating in the English language, requiring the court reporter to clarify his responses. Again, these explanations are similar to those the Nebraska Supreme Court has found to be sufficient for purposes of overruling a *Batson* challenge. The

district court did not commit clear error in accepting the explanations and overruling the *Batson* challenge.

*Motion to Quash.*

Grant's second assignment of error is that the district court erred in denying his motion to quash, "which ultimately led to [Grant] being denied due process to a [sic] proper defense, given the confusion that resulted from the Jury Instructions regarding the identity of the victims." Brief for appellant at 2.

We briefly summarize the pertinent background again for context. Prior to trial, Grant filed a motion to quash the information on the basis that count II named "no victim or set of victims." At the same time, he filed a motion for a bill of particulars asking for the names of the victims of count II. The court sustained the motion for a bill of particulars, then asked defense counsel, "And then that would handle your motion to quash . . . would you agree?" Counsel responded affirmatively, and the court found that the motion to quash was moot.

On appeal, in support of his second assignment of error, Grant argues that the motion to quash "was not moot." Brief for appellant at 15. Although his argument is somewhat difficult to follow, he seems to argue that the motion to quash was not moot because at the hearing on the motion to quash, defense counsel had "no expectation" that the court would later approve jury instruction No. 3 without including the names of the alleged victims. *Id.*

It is well-established that a party cannot complain of error which he or she has invited the court to commit. *State v. Dixon*, 286 Neb. 157, 835 N.W.2d 643 (2013). Here, defense counsel agreed with the district court that its decision to sustain the motion for a bill of particulars resolved the pending motion to quash. Grant cannot now present a contrary argument on appeal. Regardless, Grant's arguments pertaining to the supposed confusion resulting from the jury instructions are better addressed in the context of his fourth assignment of error, which we address below.

*Motion for Mistrial.*

Grant's third assignment of error is that the district court erred in overruling his motion for mistrial after the State violated the court's ruling on his motion in limine. In support of this assignment of error, Grant argues that Sergeant Peterson's testimony that Grant said "'I will punch my defense attorneys and stuff'" was prejudicial, because the victims of count II alleging terroristic threats were the deputies, not Grant's attorneys. Grant asserts that "[t]he prejudice is even more pronounced when coupled with the Court leaving out the victims' names" in jury instruction No. 3. Brief for appellant at 18.

Again, we briefly summarize the pertinent background. After Sergeant Peterson testified that Grant said "'I will punch my defense attorneys and stuff,'" defense counsel asked for a side bar, at which he moved for a mistrial or, alternatively, to strike the offending portion of the sergeant's testimony. The court addressed the motions during a recess at the conclusion of Sergeant Peterson's testimony. The court overruled the motion for a mistrial, reasoning that the testimony was "very minimal" and did not "in any way prejudice or cause enough harm to the defendant's right to a fair trial . . . to rise to the level of a mistrial." The court then sustained the motion to strike the testimony. Following the recess, the court instructed the jury to "disregard the following

statement that was made by deputy [sic] Peterson: 'I will punch my defense attorneys and stuff,' end of statement."

Ordinarily, when an objection to or motion to strike improper evidence is sustained and the jury is instructed to disregard it, such instruction is deemed sufficient to prevent prejudice. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). A mistrial is properly granted in a criminal case only where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Dixon*, 286 Neb. 334, 837 N.W.2d 496 (2013).

We agree with the district court that the sergeant's single reference to Grant's statement threatening his attorney was not so prejudicial as to warrant a mistrial. Rather, the testimony was minimal, and the court' admonition to the jury to disregard the statement was sufficient to prevent prejudice. We are not persuaded by Grant's argument that the testimony was prejudicial because jury instruction No. 3 did not include the victims' names, resulting in possible confusion as to whether the deputies or Grant's attorneys were the victims of the terroristic threats charge. As we explain below when addressing Grant's fourth assignment of error, the jury instructions were not misleading. In sum, we conclude that the court did not abuse its discretion in overruling Grant's motion for a mistrial.

*Jury Instructions.*

Grant's fourth assignment of error is that the district court erred in giving contrary jury instructions regarding the elements of terroristic threats. Specifically, Grant argues that jury instruction No. 3, which did not name the alleged victims of the terroristic threats charge, conflicted with jury instruction No. 9, which named the victims. Grant contends that jury instruction No. 3 "omitted a material element of that charge" and that the jury could have believed "that the victim(s) could be someone or anyone." Brief for appellant at 19-20.

When reviewing a challenge to jury instructions, a court must read all the instructions together, and if taken as a whole they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. *State v. Merchant*, 288 Neb. 439, 848 N.W.2d 630 (2014). In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Vela*, 279 Neb. 94, 777 N.W.2d 266 (2010).

Section 28-311.01 defines the crime of terroristic threats. As pertinent to the charge in count II of the information, the statute provides that "[a] person commits terroristic threats if he or she threatens to commit any crime of violence" either "[w]ith the intent to terrorize another" or "[i]n reckless disregard of the risk of causing such terror." § 28-311.01(1)(a), (c).

As set forth above, jury instruction No. 3 stated, in pertinent part, that count II of the information charged Grant with terroristic threats. The instruction then indicated that the State alleged "in substance" that "[o]n or about October 27, 2014, in Douglas County, Nebraska, Robert W. Grant, did then and there threaten to commit a crime of violence with the intent to terrorize another or in reckless disregard of the risk of causing such terror." The instruction provided that Grant had pleaded not guilty, and that the charges and Grant's pleas "make up the issues which you will determine by your verdicts."

Jury instruction No. 9 was much more detailed and specifically instructed the jury that under count II of the information, the jury could return one of two possible verdicts, either (1) guilty of terroristic threats, or (2) not guilty. The instruction went on to provide:

> The material elements which the State must prove, by evidence beyond a reasonable doubt, in order to convict the Defendant of the crime of terroristic threats as charged in the information, are: 1. That on or about October 27, 2014, in Douglas County, Nebraska, the Defendant, Robert W. Grant, threatened to commit a crime of violence to Deputy Kristopher Petersen [sic] and Deputy Kevin Manak; [and] 2. That the threat was made with the intent to terrorize another or in reckless disregard of the risk of causing such terror.

The instruction then indicated that "[t]he State has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements necessary for conviction."

Reading these jury instructions together, we are not persuaded by Grant's contention that he was prejudiced by the omission of the victim's names from jury instruction No. 3. That instruction merely set forth "in substance" the State's allegations contained in the information. It did not specifically address the elements of the offense, the applicable burdens of proof, or the possible verdicts. Even if the instruction would have been more accurate if it had named the alleged victims of the terroristic threats charge, the omission could not have prejudiced Grant given the detailed instructions contained in jury instruction No. 9. Specifically, jury instruction No. 9 informed the jury that the State had the burden of proving beyond a reasonable doubt "each and every one of the foregoing material elements," including that Grant "threatened to commit a crime of violence to Deputy Kristopher Petersen [sic] and Deputy Kevin Manak." Taken as a whole, the instructions were clear and straightforward and did not present a risk of confusion.

Before leaving the issue of the jury instructions, however, we note that in the bill of particulars, the State identified the victims of count II as "Sheriff's Deputy J. Williamson," "Sheriff's Deputy R. Rogers," "Sheriff's Deputy F. Christiansen," and "Sheriff's Sergeant K. Peterson." However, in jury instruction No. 9, the State identified the victims as "Deputy Kristopher Petersen [sic] and Deputy Kevin Manak." Deputy Manak was not identified as a victim in the bill of particulars.

Grant did not raise the discrepancy between the bill of particulars and jury instruction No. 9 either before the district court or on appeal. Absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014). Plain error exists where there is error, plainly evident from the record but not complained of at trial, that prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. Because only one victim was necessary to support the conviction of terroristic threats, and because Sergeant Peterson was named as a victim in the bill of particulars and in jury instruction No. 9, we find no plain error.

*Excessive Sentence.*

Grant's fifth and final assignment of error is that his sentences were excessive. His sole argument is that the sentences were excessive "[g]iven the nature of the Deputy's injuries" and the

fact that his "hands were cuffed and shackled when the threats were made." Brief for appellant at 22.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013). Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

At the time of sentencing, the sentencing range for third degree assault on an officer, a Class IIIA felony, was 0 to 5 years' imprisonment or a $10,000 fine or both. Neb. Rev. Stat. § 28-105(1) (Cum. Supp. 2014). The sentencing range for terroristic threats, a Class IV felony, was also 0 to 5 years' imprisonment or a $10,000 fine or both. § 28-105(1). Grant's sentences of 5 to 5 years' imprisonment for third degree assault on an officer and 20 months' to 5 years' imprisonment for terroristic threats were within statutory limits.

As noted above, in sentencing Grant, the district court made no findings, other than referencing Grant's "history and record." This may have been a reference to Grant's recent convictions of first-degree murder and use of a deadly weapon to commit a felony, for which Grant was sentenced to consecutive terms of life imprisonment and 50 to 50 years' imprisonment. See *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016) (affirming Grant's convictions and sentences in that case). Again, Grant was on trial for those offenses when he committed the acts that resulted in the charges in the present case. Considering Grant's history and the circumstances of the present crime, we cannot say the court abused its discretion in sentencing Grant as it did.

We reject Grant's efforts to minimize his crimes based on "the nature of the Deputy's injuries" and the fact that his "hands were cuffed and shackled when the threats were made." Brief for appellant at 22. By all accounts, several deputies were required to restrain Grant in the courtroom, and he was "very violent," "very upset," and "very angry" during the altercation. Although Grant was in handcuffs and leg irons when he repeatedly threatened to "punch all of you mother-fuckers," his additional statements that he had "people on the outside" clearly were intended to indicate that he had the ability to cause the deputies to be harmed even while he was in custody.

Also with respect to sentencing, we note that the court did not request a presentence investigation prior to sentencing. Grant did not raise this issue in the district court or on appeal. Again, absent plain error, an issue not raised to the district court will not be considered by an appellate court on appeal. *State v. Kays*, 289 Neb. 260, 854 N.W.2d 783 (2014).

Neb. Rev. Stat. § 28-2261(1) (Cum. Supp. 2014) provides that "[u]nless it is impractical to do so, when an offender has been convicted of a felony, the court shall not impose sentence without first ordering a presentence investigation of the offender and according due consideration to a written report of such investigation." However, the Nebraska Supreme Court has held that one instance in which it may be impractical to request a presentence investigation is where another investigation has just been completed. See *State v. Qualls*, 284 Neb. 929, 824 N.W.2d 362 (2012), citing *State v. Tolbert*, 223 Neb. 794, 394 N.W.2d 288 (1986). Here, given that Grant was recently sentenced in the district court for Douglas County for first-degree murder and use of a deadly

weapon to commit a felony, we find no plain error in the district court's decision in the present case to not request a presentence investigation.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Douglas County.

AFFIRMED.